15277

GREEN v. CITY OF BENNETTSVILLE

(15 S. E. (2d), 334)

314

November, 1940.

Mr. *Norbert A. Theodore* and Mr. *Heyward Brockinton*, both of Columbia, for appellant,

*Messrs. Stevens & Lindsay,* of Bennettsville, for respondent,

June 9, 1941.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE T. S. SEASE.

This is an appeal from an order of Honorable E. C. Dennis, reversing the award of the South Carolina Industrial Commission in favor of the appellant on the ground that there was no accidental injury under the South Carolina Workmen's Compensation Act, Act July 17, 1935, 39 St. at Large, p. 1231 *et seq.* A. C. Green, deceased, was employed by the City of Bennettsville, South Carolina, for a period of six years prior to his death which occurred on the 23rd day of December, 1939, while he was admittedly discharging the duties of a policeman. His widow, the appellant, filed her claim with the South Carolina Industrial Commission claim-

ing the benefits under said Act. The matter was heard by the chairman commissioner, Hon. John H. Dukes, who as hearing commissioner made certain findings of fact and awarded the appellant, as the widow of the deceased, the sum of Sixteen and 57/100 ($16.57) Dollars per week for a period of three hundred fifty (350) weeks, commencing December 24, 1939, with a further award of Two Hundred ($200.00) Dollars for funeral expenses, the total not to exceed Six Thousand ($6,000.00) Dollars. An appeal was taken by the respondent from such award to the full commission. The full commission affirmed the findings of fact, conclusions of law, and award of the hearing commissioner. The respondent then appealed to the Court of Common Pleas for Marlboro County, and Honorable E. C. Dennis, who heard the appeal on October 18, 1940, reversed the full commission on the ground that "there was no accident" as defined by Section 2(f) of the South Carolina Workmen's Compensation Act.

The undisputed evidence shows that the deceased, A. C. Green, was a man of approximately sixty-eight years of age, and had been discharging his duties as a policeman for the Town of Bennettsville, South Carolina, for six years prior to the circumstance which led to his death. On December 23, 1939, he assisted another policeman, Mr. Murray Jackson, in arresting a Negro who was giving Mr. Jackson some trouble. The weather was cold and it was raining. In effecting the arrest the deceased was thrown to the ground, but by the exercise of considerable physical effort he was able to complete the arrest. However, immediately thereafter he died from a strain on his heart, directly resulting from over exertion.

Our first inquiry has to do with whether or not there is any testimony in the record tending to show that the death of the employee, A. C. Green, was the result of injury from accidental means. The burden was doubtless upon the plaintiff (claimant) to present evidence from

which the Industrial Commission could properly find that the death of the deceased resulted from an injury by an accident arising out of and in the course of his employment. It is admitted that the deceased was in the course of his employment and was discharging his duties as a policeman of the City of Bennettsville, at the time of his death. Was his death the result of an accident?

The appellant contends the death of the deceased was the unforeseen and unexpected result of exertion which caused a sudden strain upon his heart and that this occurred while arresting an offender against the law in the discharge of his duty as a policeman. The respondent argues that death resulted from a diseased heart condition, and not from an accident.

Dr. P. M. Kinney, the only doctor who testified in the case, stated he was the family physician for the deceased, A. C. Green, who from the latter part of October to the first part of December was under his care and confined to his, the deceased's, home, suffering from what is generally called myocarditis, a weakening of the heart muscles. Such a condition is rather common among individuals of his age. He was suffering from no constitutional disease, but from a weakness caused by age. The deceased was given rest and drugs to strengthen his heart.

He last saw the deceased professionally on December 18, 1939, at which time he told the deceased not to exert himself. His condition had become better, but he didn't tell the deceased that sudden exertion or over-exertion would kill him. In his opinion, after hearing the testimony of the witnesses, the deceased's death was brought about by the over-exertion and sudden heavy duty on the deceased's weakened heart muscles which dilated, causing his death. The deceased otherwise would have lived, in the opinion of this witness, his normal life, the life of the average patient suffering from a like trouble, but his death was accelerated and brought about by the over-exertion and sudden strain on his heart.

The general physical condition and condition of the heart of deceased was such that it was reasonable to conclude he, the deceased, would have lived some years longer were it not for the effort he exerted in arresting the Negro as described to him and, in his opinion, such exertion produced a sudden dilation of the heart causing the deceased's death.

The assistant chief of police, Mr. J. L. Watson, stated that the usual duty of the deceased was watching the children at the school house, but around Christmas time it was necessary for the deceased to be in town. He was a witness to the arrest, and he saw the exertion was becoming too much for the deceased, who was thrown to his knees by the Negro. The deceased was on duty ten hours daily, but around Christmas time twelve hours duty was required. The witness and the chief of police knew of the physical condition of the deceased.

"Policeman" has been defined as: "A member of the Police." "Police" is defined: "An organized civil force for maintaining order, preventing and detecting crime, and enforcing the laws; the body of men by which the municipal laws and regulations of a city, town, or district are enforced." Webster's Twentieth Century Dictionary, Unabridged. And again it is defined:

"That species of superintendence by magistrates which has principally for its object the maintenance of public tranquility among the citizens. The officers who are appointed for this purpose are also called the police. * * *

"The word *police* has three significations. The *first* relates to the measures which are adopted to keep order, the laws and ordinances on cleanliness, health, the markets, etc. The *second* has for its object to procure to the authorities the means of detecting even the smallest attempts to commit crime, in order that the guilty may be arrested before their plans are carried into execution and delivered over to the justice of the country. The *third* comprehends the laws,

ordinances, and other measures which require the citizens to exercise their rights in a particular form.

"Police has also been divided into *administrative police,* which has for its object to maintain constantly public order in every part of the general administration; and *judiciary police,* which is intended principally to prevent crimes by punishing the criminals. Its object is to punish crimes which the administrative police has not been able to prevent." Bouvier's Law Dictionary, Unabridged. Rawle's Third Revision, Volume 2.

It is seen from the above the duties of a policeman are varied and one of the incidents of such duty is the arrest of individuals who violate the laws and ordinances of the municipality. It is common knowledge that only in the small minority of cases does the person arrested resist such arrest. The deceased was discharging his duties and was in the course of his employment when he assisted in the arrest of this Negro who was resisting arrest to such an extent that it took the combined efforts of two policemen and considerable physical exertion on their part to effect the arrest. The deceased had discharged such duties for a period of six years without any ill effects to himself.

Counsel for respondent would argue that the deceased intentionally undertook to do something which he in reason knew would bring about his death. Such an act is not natural to a human being, and the law presumes that a man would not consciously bring about his own self-destruction. There is no testimony which shows that decedent knew such over taxation of his strength would bring about his sudden death; his doctor had told him to go back to work and now believes he would ordinarily have lived his normal life. His physician advised him to avoid exertion but did not delimit exertion or warn him as to the consequences thereof.

Judge Dennis decided that there was no "accident," as is defined by the South Carolina Workmen's Compensation

Act. Section 2(f) of the Act prescribes conditions under which an employee may receive compensation for personal injury; " 'injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidedly from the accident." Therefore it seems to be admitted by the Circuit Judge that at the time of the incident the deceased was performing duties in the course of his employment, and that everything he did arose out of his employment. Consequently the last condition, "injury by accident," is the basis upon which the Circuit Court disagreed with the single and full commission in its findings of fact.

The word "accident" as used in workmen's compensation has been defined as an unlooked for and untoward event which is not expected or designed by the person who suffered the injury. Honnold on Workmen's Compensation, Volume 1, Section 85, page 85, says: "The word 'accident' refers to the cause of the injury, and is here used in its ordinary and popular sense as denoting an unlooked for mishap or an untoward event which is not expected or designed by the workman himself, a physiological injury as the result of the work he is engaged in, an unusual effect of a known cause, a casualty. It implies that there was an external act or occurrence which caused the injury or death. It contemplates an event not within one's foresight and expectation resulting in a mishap causing injury to the employee. Such an occurrence may be due to purely accidental causes, or may be due to oversight and negligence. It may be due to carelessness, not willful, to fatigue, or to miscalculation of the effects of voluntary action."

Schneider, in his work, Workmen's Compensation Law, Volume 1, Second Edition, page 513, has this to say:

"The event, to constitute an accident, must be one that is unforeseen; that is, unforeseen by the person injured by its occurrence. The standard taken is not necessarily the intelli-

gence or foresight of the average person. Indeed, it has been declared that an occurrence is unexpected if it is not expected by the person who suffers by it, even though every man of common sense who knew the circumstances would think it certain to happen.

"The fact that the result of an extraordinary exertion by a man of impaired physique would ·have been expected or contemplated as a certainty by a physician, if he had previously examined the man, means nothing in this regard. Although the result may have been due to the willful act of another, if it was unintended or unforeseen by the person suffering injury therefrom, the occurrence is nevertheless an accident.

"The words 'undesigned' or 'unforeseen' refer to the result produced, and not to its cause. When a man lifts a heavy weight, he intends to do exactly what he does do; nevertheless, if he strains a muscle, or ruptures a blood vessel, the injury is due to an accident."

And again at page 517, the following is set forth as the general law : "Likewise the Courts, consistent with the theory of Workmen's Compensation Acts, hold with practical uniformity that, where an employee afflicted with disease receives a personal injury under such circumstances as that he might have appealed to the Act for relief on account of the injury had there been no disease involved, but· the disease as it in facts exists is by the injury materially aggravated or accelerated, resulting in disability or death ·earlier than would have otherwise occurred and the disability or death earlier than would have under ordinary conditions, but the injury aggravating and accelerating its progress, materially contributes to hasten its culmination in disability or death, there may be an award under the Compensation Acts."

Section 2(f) of the Act was first considered by this Court in the case of *Spearman v. R. F. Royster Guano Company,* 188 S. C., 393, 199 S. E., 530, 531, but a conclusion as to

the exact meaning of the words "injury by accident" was not reached.

This section was again considered by this Court in the case of *Layton v. Hammond-Brown-Jennings Company,* 190 S. C., 425, 3 S. E. (2d), 492, 493, 495, wherein it is stated:

"When respondent's injury occurred he was lifting a heater off the pile or stack of heaters just like he had lifted the others—in the usual manner. He did not strike himself in any way. He did not slip, his foot did not slip and he did not stumble nor fall. There was no untoward happening. He was not conscious of any strain. However, from the circumstances related, it is a reasonable inference that there was a strain. * * *

"We are circumscribed by the rule as stated by our own Court in *Goethe v. New York Life Insurance Co.,* 183 S. C., 199, 217, 190 S. E., 451, 458, as follows: 'The rule clearly deducible from the overwhelming weight of authority is that, when injury or death follows or results from a voluntary act of the insured, and the act is one which is not manifestly dangerous, but which is ordinarily done or performed without serious consequences to the doer, such result is caused by accidental means. This is nowhere better stated than by Sanborn, J., in *Western Commercial Travelers' Association v. Smith,* 85 F., 401, 405, 29 C. C. A., 223, 56 U. S. App., 393, 40 L. R. A., 653, where he says: "An effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and * * * cannot be charged with the design of producing, * * * is produced by accidental means." '

"The words 'by accident,' and 'an accident,' as used in the Act, and the words 'accidental means,' as used in insurance policies are, it seems to us, synonymous.

"One of the purposes of the Workmen's Compensation Act, is to protect and partially compensate employees who are injured while engaged in the regular course of their em-

ployment irrespective of mishap independent of the injury itself, and/or negligence on the part of either the employee or employer.

"If we have misapprehended the legislative intent, then this can be remedied by an amendment to the Compensation Act clarifying such intent; and should an amendment be sought, the writer hopes that the Legislature will have access to the learned and informative argument on behalf of appellants, filed in this case."

In the next case in which this section was considered, *Cole's Next of Kin v. Anderson Cotton Mills,* 191 S. C., 458, 4 S. E. (2d), 908, 911, the Court said:

"The vital question is: Did the infection result from the tightening of the nut with the wrench, or did the pain which Cole felt at the time of the using of the wrench result from the infection (pus) then in the shoulder?

"The Single Commissioner, Mr. Dukes, finds as a matter of fact that the injury of which Clinton Cole complained was caused by 'accident' arising out of and in the course of his employment, resulting in an injury to his right shoulder from which he finally (on June 6th) succumbed. This finding of fact was concurred in by the Full Commission on review and by the Circuit Judge who heard the case on appeal to that Court. Appellants by their third exception challenge this finding in the following language: 'Because there was no sufficient if any, competent testimony showing that the death of Clinton Cole was the result of any injury by accident arising out of and in the scope and course of his employment within the meaning of the provisions of the Compensation Act.' "

After quoting at length from the *Layton case, supra,* the Court said:

"It is conceded that if there is any competent evidence to support the findings of fact by the Commission, the sufficiency of it is not a question for this Court; by the express

provisions of the Act that question is solely for the Commission. Is there such evidence in the case now before us?
\* \* \*

"There is other testimony to the effect that when Clinton Cole came to work on the morning of May 21 he seemed well; that toward the middle of the day he complained of pain in his right shoulder, which he suffered while pulling on a wrench to tighten a nut on a stop motion; that he grew worse, suffering much pain, was taken to the hospital and operated on; that pneumonia developed and he died."

The principle of law, where an injury aggravates a pre-existing condition or disease, was settled in the case of *Cole v. State Highway Department,* 190 S. C., 142, 2 S. E. (2d), 490, where Mr. Justice Fishburne states the weight of authority in compensation cases leans to the view that even where an injury aggravates a pre-existing condition or disease so that the disability is continued for a longer period than would normally result from the injury alone, such disability is nevertheless compensable.

Was there any evidence to support the findings of fact of the Industrial Commission? The sufficiency of the evidence is strictly a matter of facts. In considering the findings of fact by the hearing commissioner, affirmed by the full commission, the Circuit Court and this Court can only inquire if there is any substantial evidence to support the findings of fact of the commission. This rule has been enunciated many times by this Court and was aptly stated by Mr. Justice Fishburne in the case of *Rudd v. Fairforest Finishing Co.,* 189 S. C., 188, 200 S. E., 727, 728: "It is a familiar formula that findings of fact by a Board or Commission on a claim under a Workmen's Compensation Act are conclusive; and the appellate court will not review such findings except to determine whether there is any evidence to support the award. It may reverse an award if there is an absence of any evidence to support it, but it is not a trier of facts. If the facts proved are capable as a matter of

law of sustaining the inference of fact drawn from them by the Board, its findings are conclusive in the absence of fraud, and neither this Court nor the Court of Common Pleas is at liberty to interfere with them. This is but an application to Workmen's Compensation cases of the fundamental principle universal in Courts of law that whether there is any competent evidence is for the Court to determine, but whether the evidence is sufficient is a question for the jury; the function of the Commission being in that respect that of a jury in actions of law. While the findings of fact by the Industrial Commission will be upheld if there is any evidence on which it can rest, it must be founded on evidence, and cannot rest on surmise, conjecture or speculation."

In the still more recent case of *Ham v. Mullins Lumber Company,* 193 S. C., 66, 7 S. E. (2d), 712, reference is made in the order of the Circuit Judge, which was approved by the Supreme Court, to the case of *Spearman v. Royster Guano Co.,* 188 S. C., 393, 199 S. E., 530, 532, as follows (193 S. C., 66, 7 S. E. (2d), 719) : "* * * the Courts have jurisdiction to review awards of the Industrial Commission only where there is no substantial evidence to support the findings of fact of the Commission, or, in other words that the Court has jurisdiction identical with the jurisdiction of the Supreme Court in jury cases in determining whether a verdict should have been directed."

And in the case of *Phillips v. Dixie Stores, Inc., et al.,* 186 S. C., 374, 195 S. E., 646, 647, the Court held that the Circuit Judge was in error in considering "whether the conclusions of the Commission have adequate support in the evidence." As the Court said: "This is just what he is forbidden to do. If there were absolutely no evidence in support of the findings of fact by the commission, we might say that the question thus becomes a question of law. But whether there is a sufficiency of evidence is strictly a matter of fact, and the findings of the commission thereabout are final."

This Court cannot say that there was no testimony to support the findings of fact of the commission for such testimony shows that the death of A. C. Green resulted from a compensable accident superimposed on an already weakened heart, and further, the accident arose out of and in the course of his employment as a policeman with the City of Bennettsville, South Carolina. His death, to him, was not the usual and probable result of his voluntary and intentional act. He had discharged the duties of policeman for six years, and had suffered no such ill effects prior thereto. There is no testimony that he foresaw or expected the result; the result, his death, was unusual. He had experienced no heart attack as the result of prior arrests, nor is it shown that in any prior arrests made by him, he suffered any other ill effects. We therefore hold that the findings of the South Carolina Industrial Commission that the deceased, A. C. Green, died as the result of an accident arising out of and in the course of his employment with the City of Bennettsville, South Carolina, has sufficient evidentiary support which neither this Court nor the Circuit Court as a matter of law can set aside.

The respondent, in its appeal to the Court of Common Pleas for Marlboro County, relied upon three exceptions to the award of the South Carolina Industrial Commission. The Court below, in sustaining the second exception, stated in its order that: "Having decided that there was no accidental injury there is no necessity for passing upon the other exceptions."

The Transcript of Record does not show that the respondent served upon the appellant notice of additional grounds upon which this Court would be asked to sustain the rulings or judgment below, as is required by Rule 4, Section 7, of the rules of this Court. Nevertheless, counsel for respondent, in their brief and orally before this Court, have argued an exception not decided or passed upon by the Court below. Appellant's counsel made

timely objection to such argument as being in violation of the above rule.

Respondent contends therein that the deceased, A. C. Green, did not come within the provisions of Section 2(b) of the South Carolina Workmen's Compensation Act in that his work was purely administrative in character. This section provides, in pertinent part, that " * * * As relating to municipal corporations and political subdivisions of the State, the term 'employee' shall include all officers and employees thereof, except such as are elected by the people or elected by the council or other governing body of said municipal corporation or political subdivision, who act in purely administrative capacities, and to serve for a definite term of office. * * * "

The Commission's second finding of fact was: "It is found as a fact that A. C. Green, deceased, was on and prior to the 23rd day of December, 1939, a regular employee as defined by Section 2(b) of the South Carolina Workmen's Compensation Act, and that as such an employee he was not solely in an administrative capacity in that his duties were not of an administrative nature and therefore subject to and bound by the terms and provisions of the said Act."

The Act of the State of North Carolina is in terms identical to the Act here in question and the reasoning of the Supreme Court of that State in *Nissen v. City of Winston-Salem*, 206 N. C., 888, 175 S. E., 310, and in *Tomlinson v. Town of Norwood*, 208 N. C., 716, 182 S. E., 659, appeals to us as correctly interpretative of this provision.

In the instant case, there is evidence that deceased was an employee of the City of Bennettsville for an indefinite term, and that his duties were not solely administrative, nor of an administrative nature, as contemplated by the Act. Such was found by the commission, and there is sufficient evidentiary support therefor in the Transcript of Record.

Accordingly, such contention of the respondent is without merit, even if the exception had been regularly and properly presented, which under Rule 4, Section 7, of the rules of this Court, should not be considered. *Kizer v. Woodmen of the World,* 177 S. C., 70, 180 S. E., 804; *Burkhalter v. Townsend,* 160 S. C., 134, 158 S. E., 221; *Asbill v. Martin,* 84 S. C., 271; 66 S. E., 297; *Cothran v. Knight,* 45 S. C., 1, 22 S. E., 596.

Having passed upon all of the issues raised by this appeal and having reached a conclusion different from that of the Circuit Judge, it is the judgment of this Court that the order appealed from be reversed, the findings of facts and award of the full commission are affirmed, and it is so ordered.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES BAKER, FISHBURNE and STUKES concur.