15492

STRAWHORN v. J. A. CHAPMAN CONSTRUCTION CO. *ET AL.*

(24 S. E. (2d), 116)

44

July, 1942.

*Messrs. Grier, McDonald & Todd,* of Greenwood, Counsel for Appellants,

*Mr. James P. Nickles,* of Abbeville, and *Mr. W. H. Nicholson* and *Mr. J. Perrin Anderson,* both of Greenwood, Counsel for Respondent,

January 22, 1943.

The opinion of the Court was delivered by MR. ASSOCI-ATE JUSTICE STUKES:

This was a claim for workmen's compensation by the widow and dependent children of W. D. Davis, deceased, formerly a painter for Mathews Cotton Mill near Green-

wood, and the appeal is by the employer, its painting contractor and the insurance carrier. The hearing commissioner denied compensation for lack of evidence of an accident, within the terms of the compensation law, but the majority of the Industrial Commission held to the contrary and was affirmed by the Circuit Court. The appeal from the latter to this Court is upon numerous exceptions, but in appellants' brief they are reduced to three questions, the first two of which really make one, to wit: Was the death of the employee caused by accident or was it the result of a noncompensable disease? And the third question challenges the sufficiency of the compliance with Sections 22 and 23 of the Act relating to notice of the alleged accident and injury, Code 1942, §§ 7035-25, 7035-26.

Deceased was thirty-five years old, of former good health and habits, had been a house painter for fifteen years and for this employer about eighteen months until August 28, 1940, when he became suddenly ill with abdominal pains, nausea and fever, all symptoms of lead poisoning. He consulted a physician near his place of employment who gave him morphine and let him go to his home some miles away where after a few days he called in a local doctor who treated him a short time and then sent him to the Anderson County Hospital. There he lingered hopelessly for weeks and despite diagnosis and treatment by several physicians developed further typical symptoms, neuritis and mental deterioration, and was sent home to die on October 27, 1940, and death occurred five days later. The several physicians who testified agreed that it was a plain case of lead poisoning, to which painters are often subject in lesser degree, but a physician for claimants, who did not see the deceased and testified only as an expert, diagnosed the case as acute lead poisoning, induced by a large and unusual inhalation of old paint, powdered by the process of removal, and was allowed to testify that the case involved an accident in that it was unusual and unexpected. Another physician (who had

treated the deceased while he was in the hospital) gave his opinion that the fatality came from an exacerbation of a chronic condition, that there had been a slow accumulation of lead over the years in the system of the deceased which in time was sufficient to cause the acute condition of poisoning which resulted in death.

All of the physicians agreed upon the basic diagnosis and all had seen during their varied, long experiences cases of lead poisoning, but none had seen a case with such acute and violent symptoms and none testified to knowledge of a former fatal case. Analysis of the blood of the deceased, made while he was a patient in the hospital, disclosed a very large amount of lead, several times that in the blood of a normal person.

The case resolves itself into whether the deceased ██ was exposed in his employment to the taking of lead into his system, and whether he did so take it, in such quantity and under such circumstances as to consti· tute an accident, causing his acute illness and subsequent death. The commission so found and the question before this Court is, was there any competent evidence to support such finding? Authority need not be cited for the latter statement of the controlling law. If there is competent sup· porting evidence, the Courts cannot disturb the finding of the commission and, therefore, need not weigh the evidence.

For convenience the following testimony is copied from respondent's brief, taken from the record. The first witness quoted was a fellow-painter who worked with the deceased for the same employer:

"Q. In painting, Mr. Strawhorn, what is required of you, do you do anything else besides just put the paint on with a brush, on the walls? A. Well, we had to clean them before we put it on.

"Q. What do you mean by cleaning them? A. Well, if we had been painting, and the old paint was there and cracked up, we rubbed that off.

"Q. You rubbed that off with what? A. Well, steel wool or wire brushes.

"Q. They created a considerable dust, did it not? A. Yes.

"Q. On every job that he had ever been painting before you had to scrape it off? A. Yes, where it was cracked up.

"Q. Well, that was in old buildings? A. Yes.

"Q. All of the old buildings? A. Yes.

\* \* \* \* \*

"Q. Mr. Strawhorn, how soon before Mr. Davis' illness on the 28th of August had you and he been engaged in the dust and taking off the dust of these buildings around there? A. I don't know exactly.

"Q. It was not over a week or so? A. Well, a week or so before that time he had been scraping some off the old buildings, yes."

The following testimony was given by W. C. Ammons, paint foreman for the appellants:

"A. Well, along about that time we started on the outside of Greenwood Mill village, he (Davis) was employed as a painter, we had a crew of I think nine negroes going ahead of the painters scraping and cleaning.

\* \* \* \* \*

"Q. How long were you engaged in Greenwood on that type of work? (Repainting old houses.) A. Well, we started that along in August and we went on until, I think we still lacked a few houses on it when I left there.

"Q. Did you begin in August or sooner than that? A. It was sooner than August.

"Q. Could you fix the time you commenced that work over there, approximately? A. I would say somewhere near the first of August or maybe the latter part of July.

\* \* \* \* \*

"Q. And you come in contact with lead on all of these houses where they have old paint, would you? A. Yes.

"Q. And he worked on a great many of the old ones, did he not? A. Yes.

\* \* \* \* \*

"A. Well, I said that they had negroes to scrape ahead of them on a major job.

"Q. But on a minor job, you did not send the negroes? A. No.

"Q. They had to do that? A. Yes, that is right. Now, let me get this straight. If the job called for enough scraping and cleaning, we did have someone else to do it.

"Q. But there were jobs that you let them do it; small jobs? A. Yes."

In addition to the foregoing evidence that the deceased as a part of his work scraped and brushed off old paint, subjecting him to the inhalation of the resulting dust containing lead, there was evidence that despite many prior years' painting experience the deceased had not been sick from lead poisoning, and the medical testimony that his case was extremely rare and that of other experienced painters who had known and observed many others, that they had never before known of such a case, all of which support the conclusion that the infection of the deceased was sudden and not to have been expected, and hence accidental under the terms of the law.

The section of our Act in question is 2 (f), Code of 1942, Section 7035-2(f), as follows: " 'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident."

Like statutory provisions were involved in *McNeely v. Carolina Asbestos Company,* 206 N. C., 568, 174 S. E., 509, where it was held that an employee who was injured by the inhalation of asbestos dust but had worked without similar bad result in other asbestos plants for years, was injured by accident and within the compensation law. The

problem was presented in that case from a different angle; suit was attempted at common law for negligence for the alleged failure of the employer to equip the plant with dust-reducing appliances, but the Court held that both were bound by the compensation law. The opinion is well reasoned and convincing. It is noted that some of the authorities cited were relied upon by this Court in *Thompson v. J. A. Jones Construction Company*, 199 S. C., 304, 19 S. E. (2d), 226; and the latter decision is also pertinent to the present inquiry. There it was held that an assault by a fellow employee or foreman upon another employee is an accident within the law, so far as the latter (the injured employee) is concerned, because unintended and unexpected. Here the evidence indicates that an acute attack of lead poisoning was not to be expected by the deceased employee because of his years of former painting experience without such and the rarity of it vouched in testimony by physicians and laymen alike.

The North Carolina Court in a later decision than that above referred to, *Swink v. Carolina Asbestos Company*, 210 N. C., 303, 186 S. E., 258, sustained a holding of the Industrial Commission of that state that another claimant suffering from pulmonary asbestosis was not injured by accident within the terms of their compensable law, identical in that respect with ours, upon the ground that there was evidence before the commission upon which it could and did base its finding, just as in this case we hold that there was evidence before our commission for its conclusion; and under the laws of both states findings of facts of the respective industrial commissions are final, when supported by competent evidence, and neither commission is subject to review by the Courts upon factual findings under such circumstances. In the latter case the McNeely decision was cited but was held not controlling of the result of the later case and the decisions were reconciled in this logical manner: It was said that in *McNeely's case* it was found and

held that he was injured by accident and therefore his injury was compensable, and his common-law action dismissed, but in Swink's case the commission found and held that the injury was caused by disease and not compensable, and there was evidence before the commission to sustain such finding, which therefore was affirmed.

Both of the foregoing North Carolina decisions were under their law then in effect, said by the Court not to provide compensation for disability or death from occupational diseases.

There are other cases from this Court defining "accident" and "injury by accident" and some of them are reviewed in the recent case of *Green v. City of Bennettsville,* 197 S. C., 313, 15 S. E. (2d), 334, and relevant in some degree is the very recent decision of *Smith v. Southern Builders,* 202 S. C., 88, 24 S. E. (2d), 109, filed January 13, 1943, wherein death from heat stroke was found to be an accident within the compensation law. The decision of the Circuit Court now appealed from is, we think, in line with them.

Furthermore, in the instant case, if the inhalation of lead in unusual quantities occurred during the period of employment of the deceased by Matthews Mill by accidental means, and we have seen that there was evidence supporting such finding by the commission, then it matters not that such unusual and accidental inhalation merely aggravated deceased's prior dormant condition as a victim (if he was) of lead poisoning, for such aggravation, resulting in death, would make the latter compensable. *Cole v. State Highway Department,* 190 S. C., 142, 2 S. E. (2d), 490, and subsequent similar cases, among them *Green v. City of Bennettsville, supra.*

Earlier cases in point from other jurisdictions than the North Carolina decisions referred to in some detail above are found in annotations in 29 A. L. R., 691, and 44 A. L. R., 371, but none of them is close enough in facts to the

present case to be worth citing. See also 71 C. J., 593, § 344, *et sequi.*

We are satisfied that the principles announced in our former decisions, above alluded to, and the rationale of the North Carolina Court in the cases cited, applying a similar statute, encompass the case in hand and require the indicated decision. We have not been unmindful of the point strongly made by appellants' counsel that from the evidence in the record no occasion of time or place can be certainly pointed to when and where the deceased was subjected to lead from paint dust in an unusual or unexpected quantity, but from the whole record, the facts and testimony of the experts, we conclude, as stated, that there was evidence to support the finding of such by the Industrial Commission, with which the Court then has nothing to do.

Worth remembering in the above connection is the principle that the right to workmen's compensation may, of course, appear by circumstantial evidence, as well as direct, and the proof, like in other civil cases, need not be such that it is inconsistent with any other condition of facts than that sought to be established. South Carolina cases in 34 S. E. Dig., Pocket part, page 223, Workmen's Compensation, Key 1414. Another pertinent consideration is that the element of surprise or improbability necessary to constitute an accident in contemplation of law need only be in the result or effect of the happening. *Goethe v. New York Life Insurance Company,* 183 S. C., 199, 190 S. E., 451; *Layton v. Hammond-Brown-Jennings Company,* 190 S. C., 425, 3 S. E. (2d), 492; *Cole's Next of Kin v. Anderson Cotton Mills,* 191 S. C., 458, 4 S. E. (2d), 908.

The remaining question for decision concerns the claim of lack of timely notice to the employer and cites Sections 22 and 23 of the Act. They were under consideration in *Buggs v. United States Rubber Co.,* 201 S. C., 281, 22 S. E. (2d), 881, and what was said there relating to liberal

construction of these provisions is applicable here and need not be repeated.

The commission held "that due and proper notice of the injury was given to the employer as required by the Act". On this subject the Circuit Court said: "The single Commissioner and the full Commission found that due notice was given. The notice was not formal but was sufficient to meet the purposes of the Act as liberally construed. There is no evidence that the defendants were prejudiced by lack of notice."

The uncontroverted facts are that the deceased became ill and left his work on August 28, 1940, and death followed on November 1st. Meanwhile, when he was in the hospital, his wife went to see Mr. Chapman with reference to paying the medical and hospital expenses, and Mr. Chapman denied liability. Also when Mr. Davis was still in the hospital his principal doctor wrote Matthews Mill with reference to the bills and advised that the deceased had lead poisoning. On November 30, 1940, within a month of the death, counsel employed by the widow wrote to the Industrial Commission for the purpose of filing claim and it was only at the request of the commission that the latter's form was filed by Mr. Chapman stating Davis' death but denying that any accident had occurred. It is not denied that Mr. Chapman and the mill had actual notice of Davis' affliction, his hospitalization and his later death. There has been no showing that prejudice has resulted to the employer or its insurer for lack of prompter, more formal notice. They had ample opportunity to present witnesses and otherwise investigate and combat the claim, which they did. Indeed, the record and the briefs show a most vigorous and skillful presentation of their positions, in this Court and below.

Section 23 of the Act contains as its second paragraph the following: "No defect or inaccuracy in the notice shall be a bar to compensation unless the employer shall prove

that his interest was prejudiced thereby, and then only to such extent as the prejudice."

This final question must be answered as the others,—adversely to the appellants.

■ Properly in mind, in this as in the consideration of other appeals involving awards of the Industrial Commission, has been the well recognized and oft repeated principle that the workmen's compensation law is remedial legislation which should be construed liberally to accomplish the end for which it was intended. See South Carolina cases to that effect in 34 S. E. Dig., Pocket part, page 143, Workmen's Compensation, Key 11, *et seq.*

No error is found in the judgment of the lower Court and it is affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and FISHBURNE, and CIRCUIT JUDGE G. DEWEY OXNER, ACTING ASSOCIATE JUSTICE, concur.