16127

## ASHLEY v. SOUTH CAROLINA HIGHWAY DEPARTMENT
### (49 S. E. (2d) 505)

*Mr. R. L. Ballentine,* of Anderson, *for Appellant,*

*Messrs. Watkins & Watkins,* of Anderson, *for R'espond-ent,*

September 22, 1948.

FISHBURNE, Justice.

This is an appeal by the claimant, M. H. Ashley, from an order of the circuit court reversing an award of the Industrial Commission. The Commission found that Ashley as a result of an accident arising in the course of his employment, was totally disabled and entitled to compensation at his

compensable wage until he returned to work at his regular salary or was pronounced as having reached maximum improvement by a competent physician. The sole question for determination is whether there is any competent evidence to justify the conclusion of the Commission that there was a causal connection between the accident sustained by the claimant and the alleged headaches which he testified commenced immediately thereafter.

Appellant was employed by the State Highway Department as a patrolman. On the night of September 5, 1946, between nine and ten o'clock, while on patrol duty, he was in pursuit of an automobile because of some alleged infraction of the law. While giving chase in his patrol car, he was blinded by the lights of an oncoming car, which he says caused him to run into the rear of a car on the right hand side of the road, traveling in the same direction as he, which he failed to see. He was moving at a rate of at least fifty five miles an hour. As a result of the collision, he was thrown forward and his head broke through his windshield. He suffered various cuts and bruises; he had a laceration in the back of his scalp and another on the top of his head extending to the hairline of his forehead. He received also, what is described as "brush" wounds on each side of his face, and a tiny cut on his lip. Shortly after the accident he was taken to the hospital in the city of Anderson, where his wounds were treated and sutured. The head wound, although deep and open down to the skull, resulted in no fracture of his skull. He was at the hospital only a few hours.

Dr. Martin, who attended him at the Anderson hospital, saw him again at claimant's home three days later, on September 8th. Claimant went to Dr. Martin's office on September 12th, at which time the stitches were removed. Except for this medical and hospital treatment, no physician was thereafter called upon to attend the claimant professionally until a week before the ensuing April 7, 1947—six months

later—when he was preparing for a hearing before the single commissioner.

The claimant testified that he had suffered from headaches ever since the accident, but that he had not suffered from headaches prior thereto. He said that he experienced dizziness in the head when he bent over and straightened up, and that these headaches and dizziness had disabled him, and rendered him unable to work or assist in the work on his father's farm. Dr. Martin testified that claimant complained of headache and dizziness on the night of the injury while in the hospital and again on September 8th and September 12th; that from the latter day until six months later he had not seen or attended him.

Dr. S. H. Ross, at claimant's request, examined him on April 7, 1947, the morning of the hearing before the single commissioner. He had not been called upon to attend claimant prior to that time. Both Dr. Ross and Dr. Martin testified as witnesses for the claimant.

Dr. Ross testified that when he examined claimant on the morning of the hearing, he had chronic infection of the four main sinuses. The import of the opinion expressed by Dr. Ross was that the injuries received by claimant in the automobile collision would not affect the sinuses at all. When asked whether a severe injury, like that suffered by claimant on September 5, 1946, would aggravate the pre-existing condition of sinus, he replied: "Well, I don't think that would affect the sinuses at all. That probably wouldn't. I don't see hardly how it could." He was then asked if in his opinion there was any relation between the head injury and the headaches or dizziness complained of. The doctor then said: "The possibility that I see there would be that the pain could be due to his sinuses, or it could be due to the fact that there is something in his injury that hasn't been uncovered. I mean, there may be some pressure somewhere on his brain, and when he stoops down it interferes with the blood supply to his brain."

Dr. Ross advised that an *x*-ray examination should be made, in which event he would look for a fracture. "The next thing would be any callus formations in case there was a fracture, and thickening of the skull on the inside would give you some pressure there, and * * * you've got to rule it out—rule this injury out completely."

Dr. Martin, who attended claimant on the night of the injury, testified to the nature of the cuts and bruises on his face and head. He stated positively that there was no fracture. He said, "I could feel and see the injury and the open areas, and there was no evidence of fracture at that time."

Approximately six months later, just before the hearing, when Dr. Martin saw the claimant and he complained of continuing headaches, he advised him to have an *x*-ray, because he could see no reason for headaches. When questioned by appellant's counsel, "Doctor, can you give us any idea or reason for these continued severe headaches since this injury?," Dr. Martin replied: "I don't know; I don't have any explanation of it." The testimony of Dr. Martin that there was no evidence of a skull fracture, removed the possibility of any callus formation which Dr. Ross said might result from a fracture.

Dr. Martin further stated that the circumstance that pain was first noticeable in those parts of the head where the small scars were, was not indicative that the headaches were not caused by sinus trouble. He said that headaches from sinus infection are pretty much scattered. He was asked the specific question by appellant's counsel: "Now, Doctor, state whether or not, in your opinion, if these headaches were caused from sinus, that the pain he has would originate from the scalp injury that you saw there a whille ago;" and he replied, "Well, I don't know how to answer that question, because I have seen them have headaches anywhere from sinus infections, and, as soon as the sinus infection cleared up, the headaches would clear up too." He also said, "I

.don't think he had a concussion of the brain or anything serious or I wouldn't have let him leave the hospital. He didn't .have enough blow to knock him out unconscious, and so forth. If he had, then I would have looked at him in a little different view point."

As stated, both Dr. Martin and Dr. Ross were physicians of claimant's own choosing; both were called by him to testify.

While the question involved is somewhat on the borderline, we think the evidence, together with the inferences which may legitimately be drawn therefrom, is not sufficient to support the finding of the Industrial Commission that there was a causal connection between the accidental injury and the headaches which appellant claims resulted therefrom.

In *Branch v. Pacific Mills,* 205 S. C. 353, 32 S. E. (2d) 1, 5, and *Mack v. Branch No. 12 Post Exchange,* 207 S. C. 258, 35 S. E. (2d) 838, it was held that where the claimant relies solely upon medical testimony to show a causal connection between the accidental injury and a certain result, testimony by medical experts that the ailment in question "possibly" or "might have" resulted from the accident, or that "the one could have brought about the other," is not sufficient. In order to justify an award, it is necessary, as stated in the two foregoing cases, that such medical experts go further and testify at least that in their professional opinion the result in question "most probably" came from the cause alleged.

For kindred cases announcing the same rule, see *Baker v. Graniteville Co.,* 197 S. C. 21, 14 S. E. (2d) 367; *Radcliffe v. Southern Aviation School,* 209 S. C. 411, 40 S. E. (2d) 626; and the more recent case of *Brewer v. Charleston Shipbuilding & Drydock Co.,* 212 S. C. 43, 46 S. E. (2d) 173.

Claimant's counsel relies upon the cases of *Balllenger v. Southern Worsted Corp.*, 209 S. C. 463, 40 S. E. (2d) 681, and *Shehane v. Springs Cotton Mills*, 206 S. C. 334, 34 S. E. (2d) 180. In *Ballenger v. Southern Worsted Corp., supra,* an award for impairment of vision was sustained solely upon lay testimony, although the medical testimony was positively to the effect that the condition of claimant's eyes was in no way related to the accident. A like situation is found in the case of *Poston v. Southeastern Const. Co.,* 208 S. C. 35, 36. S. E. (2d) 858. A reading of these cited cases will show, however, that the evidence or lay testimony was far stronger there than here. In those cases, the resultant disability was not invisible, but was to a considerable degree external and objective, and subject to observation.

In this case, there is no testimony as to the real cause of claimant's disability, which leaves us merely with an inference. Both of his physicians deemed an *x*-ray examination an indispensable prerequisite to determine causal connection. The award of the hearing commissioner ordered that the claimant report to Dr. T. A. Pitts at Providence Hospital, Columbia, for such examination, but the record fails to disclose whether this examination was made, or any report thereabout.

It appears to be conceded that claimant was suffering from a pre-existing disease altogether unconnected with the accident. As shown by the medical testimony, the doctors would not ascribe the traumatic injury to the head as the origin of claimant's alleged headaches and dizziness. It seems to us that the only reasonable inference to be drawn from the medical testimony, and from all of the evidence in the case, in the absence of an *x*-ray report, is that the headaches and dizziness resulted directly from chronic infection of claimant's four main sinuses. Any other conclusion could not be disassociated from surmise and conjecture; any other conclusion would be guesswork.

In *Shehane v. Springs Cotton Mills*, 206 S. C. 334, 336, 34 S. E. (2d) 180, relied upon by claimant, there was a divergence of medical opinion, and for that reason the court held that there was testimony upon which the finding of liability could be based.

In the case before us, there is no competent evidence upon which to base the award of the Industrial Commission.

Judgment affirmed.

BAKER, C.J., and STUKES, TAYLOR and OXNER, JJ., concur.