18796

Virginia M. MIZE, Respondent, v. SANGAMO ELECTRIC COMPANY and the Travelers Insurance Company, Appellants

(161 S. E. (2d) 846)

252

*Messrs. Watkins, Vandiver, Kirven, Long & Gable,* of Anderson, *for Appellants,*

*Messrs. Anderson, Chapman* & *Kenyon,* of Anderson, *for Respondent,*

May 31, 1968.

BUSSEY, Justice.

On a prior appeal in this Workmen's Compensation case, 246 S. C. 307, 143 S. E. (2d) 590, the cause was remanded to the Industrial Commission for the purpose of making factual findings on three points, not made in the original award: (1) whether there was a reasonable excuse for the failure of the employee to give written notice of the accident within thirty days; (2) whether the employer was prejudiced by such failure, and (3) whether a claim was filed with the Industrial Commission within one year, as required by statute. For the purpose of determing these factual issues, the opinion provided for the taking of such additional testimony as the parties might offer.

Pursuant to this remand, another hearing has been held. The Commission has found factually that there was reasonable excuse for the employee not giving written notice within the thirty days; that the employer cannot claim prej-

udice because it had full notice in fact through a plant supervisor, and that the claim was filed with the Commission by claimant through her attorney on August 30, 1963, well within one year after her accident, which occurred on December 14, 1962. The prior award was in all other respects reaffirmed. The award of the Commission has been affirmed by the circuit court and the employer is here again as appellant.

Since our prior opinion did not deal in any detail with the facts of the case, we now set them forth in the light of the established principle that the evidence and the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the claimant.

Claimant, at the time of her accident, on December 14, 1962, was approximately thirty-six years of age. She went to work that afternoon on a shift which commenced at 4:30 P.M. and ended at 1 A.M. the following day. She was the operator of a magnet machine, and as a part of her duties she had to fill a bucket with magnets, for use on her machine. While a three-pound lard bucket was used, it is inferable that such bucket full of magnets was quite heavy, though the record does not, with any certainty, disclose even the approximate weight thereof. In bending over and picking up a bucketful of magnets, claimant was struck with a sharp pain in her back which ran down her right leg and, as a result, her leg became considerably swollen before the end of her shift.

Claimant's immediate supervisor at the time was Rayford Burdette. At some unspecified time during the earlier part of claimant's shift on the particular date, Burdette came by and asked claimant if she would work on Saturday, which was not a regular work day, and she told him that she would. The testimony does not reflect the precise hour of either this conversation or the accident, but, in any event, Burdette came back by sometime between 10 and 11 o'clock in the evening, such visit being at a time sufficiently subse-

quent to the time of the accident that claimant's leg had in the meantime swollen therefrom. On this visit of Burdette, claimant not only told him in some detail about the accident, but undid her shoe and showed him the visible effects of the accident, the extent to which her leg had swollen. A discussion ensued between the two as to whether claimant would be able, in view of her injury, to work the following day as previously promised. Burdette insisted that she come to work on Saturday; assured her that she would be all right, and that in view of her injury he would keep her on a sitting down job.

Claimant worked until the end of her shift that night and went home, but had a lot of pain in her back and leg and had to elevate her legs to be able to sleep at all. The following morning she had to have the help of her husband to get out of bed and was not able to report to work that afternoon as promised. She phoned to let her employer know that she would not be there as promised. She did not testify as to whom she talked when she called or precisely what she said, but it is at least a logical inference, when her testimony is viewed in its entire context, that she did give the reason for not coming to work when she phoned. Even if she did not give the reason in this telephone conversation, the supervisor, Burdette, in view of his two conversations with her on the previous evening, had every reason to know or believe that claimant's absence was probably due to her accident and injury.

Evidence adduced on behalf of the employer shows that under the foregoing facts and circumstances, Burdette was charged by his employer with the duty to send claimant to first aid and make a report of the accident. He did neither. Claimant herself did not report to first aid but the employer's Director of Industrial Relations testified that employees were permitted to report accidents to their immediate supervisors.

While claimant continued to have pain, she worked the following week, which was the week before Christmas, and

then after time off for the holidays, worked Wednesday, Thursday and Friday, and was "furloughed" on December 28th along with twenty-seven other employees because of a cut back in production. She was advised by the employer to promptly apply for unemployment compensation and that she would be called back in six or seven weeks. Claimant did not make a written report of her injury and did not seek any medical attention until the latter part of January 1963. Claimant testified, without objection, that three different doctors concurred in the diagnosis that she was suffering from a ruptured disk, and the employer does not contest this diagnosis.

Evidence adduced at the second hearing would indicate that she first consulted a physician on January 25, 1963, and was hospitalized on January 27. In any event, she was hospitalized for two weeks and was confined to bed at home for some weeks thereafter.

Claimant continued to have difficulty but succeeded in obtaining employment about the middle of July 1963, as a counter clerk for a dry cleaning establishment, where she worked until January 1964, when she had to quit the job because of pain in her back and leg and the dragging of her leg. From January 1964 until the date of the first hearing, on March 16, 1964, she was unemployed. Claimant from time to time drew unemployment compensation benefits when she was not employed and not confined to the hospital or in her home.

In August 1963, claimant's present counsel asked for a hearing, using Form 25, as prescribed by the Commission, and the employee was, in due course, notified of the filing of such request. The record reflects that at some undisclosed time prior thereto claimant had employed another attorney, but the record does not disclose just what resulted from such employment, except that the employer called the claimant and wanted her to return to work, but she declined because of her injury and disability

The foregoing facts, except where otherwise noted, are taken from the record of the initial hearing. On the second hearing claimant offered no additional testimony, and the testimony adduced by the employer was, for the most part, not germane to the issues encompassed within the remand. The facts hereinabove related as to the actual knowledge on the part of claimant's supervisor, as well as his duty and responsibility, are virtually undisputed. On these facts disclosed by the evidence, the Commission has found as a fact that there was reasonable excuse for the claimant not having given written notice within thirty days, and that the employer could not claim prejudice because of such failure since it had full notice in fact through its supervisor. It is our view that both of these findings are abundantly supported by the evidence.

Had written notice been given, it would have been required to state in ordinary language only, "the name and address of the employee and the time, place, nature and cause of the accident and of the resulting injury." Code Sec. 72-302. The consequences of the injury here later turned out to be more serious than was contemplated by either the claimant or the employer, but the evidence abundantly shows that within the thirty day period with which we are concerned, the employer had quite as full knowledge of the facts which would have been disclosed by a written notice, immediately given, as did the claimant herself.

Prior opinions of this court abundantly support the conclusion reached by the Commission that an employer cannot claim prejudice where its knowledge of the pertinent facts was as full as would have been disclosed by the written notice had such been given. *Strawhorn v. J. A. Chapman Const. Co.,* 202 S. C. 43, 24 S. E. (2d) 116; *Teigue v. Appleton Co.,* 221 S. C. 52, 68 S. E. (2d) 878; *Raley v. City of Camden,* 222 S. C. 303, 72 S. E. (2d) 572; *Ricker v. Village Management Corp.,* 231 S. C. 47, 97 S. E. (2d) 83.

It might not be amiss to point out that Sec. 72-302 of the Code contains, *inter alia,* the following language:

"No defect or inaccuracy in the notice shall be a bar to compensation unless the employer has proved that its interest was prejudiced thereby and then only to the extent of such prejudice."

Under a liberal construction of Sec. 72-301 and Sec. 72-302, this court has applied the quoted language to cases such as this where there was no written notice, but knowledge of the pertinent facts on the part of the employer, and held that the burden was upon the employer to prove prejudice. *Strawhorn v. J. A. Chapman Const. Co.,* 202 S. C. 43, 24 S. E. (2d) 116.

There is nothing in the evidence even tending to prove that the employer was, in fact, prejudiced by the failure to give, within thirty days, the statutory written notice.

The challenge by the employer-carrier of the finding that a claim was filed with the Commission within one year raises an issues of law, rather than of fact. It is undisputed that claimant's attorney filed with the Commission a request for a hearing on or about August 30, 1963, using Form 25 required by Rule No. 1 of the Industrial Commission. The employer's contention is simply that the contents of this form were insufficient to constitute a claim within the purview of the statute. It does not appear from the record that any other form is either furnished or required under the rules of the Commission for filing the claim required by statute. We think it necessary to pass in detail upon the contents of the form used or precisely what a claim within the purview of the statute should contain. Suffice it to, say that we are confident that the form filed here on behalf of the claimant was quite sufficient, under the circumstances, to serve the purpose of the statute.

Notice of filing was promptly sent by the Commission to the employer-carrier. Correspondence followed between the carrier and claimant's counsel, in

which counsel expressed a willingness to discuss the claim in detail with the adjuster of the carrier. A hearing was set for September 30, 1963, but the employer-carrier requested a continuance for purpose of further investigating the claim, which request was granted, and as a result of this request, the hearing was not held until March 16, 1964. In the meantime, the employer-carrier, on October 29, 1963, denied all liability. Not until the application for a review by the full Commission, following the hearing on March 16, 1964, did the employer-carrier ever raise any question as to the sufficiency of the form filed with the Commission to constitute a claim within the purview of the statute. Had the hearing been held on September 30, 1963, instead of being postponed at the request of employer's carrier, and any question as to the sufficiency of the claim timely raised, the claimant would still have had more than two months remaining in which to file with the Commission a claim meeting any objections raised by the employer-carrier. Under these circumstances, the employer-carrier should not now be heard to complain, even if the form filed on behalf of the claimant was insufficient in any particular to constitute a claim within the purview of the statute.

On the first appeal, it was contended that there was no competent evidence of any disability causally connected with the accident and injury sustained by the employee, which contention was passed upon by this court only by implication, the opinion not having dealt expressly therewith. We use the term "implication" because, patently, if there was no competent evidence of causally connected disability, a remand for specific findings on the other issues would have been pointless. The issue is, however, again presented on this appeal and since we did not do so in the first instance, we now pass expressly thereupon. Only the evidence adduced upon the first hearing is properly considered in the determination of this issue as, on remand, such issue was no longer before the Commission.

The diagnosis of a ruptured disk is not contested. Except for the diagnosis which claimant herself testified to on the first hearing, without objection, no medical evidence was offered tending to either prove or disprove causal connection between the injury sustained and the ruptured disk the claimant was later found to have. The question is simply whether the lay testimony of the claimant herself, unsupported by any medical evidence, other than the admitted diagnosis, is sufficient to support a finding of causal connection between the initial accident and injury and the disability suffered by the claimant. Circumstantial evidence and lay testimony can be sufficient to support a finding of causal connection in a Workmen's Compensation case. Such evidence need not reach such a degree of certainty as to exclude every reasonable or possible conclusion other than that reached by the Commission. It is sufficient if the facts and circumstances proved give rise to a reasonable inference that there was a causal connection between the disability and the prior injury. Whether the absence of medical testimony is conclusive on the question of causation depends upon the particular facts and circumstances of the case. See *Grice v. Dickerson, Inc.,* 241 S. C. 225, 127 S. E. (2d) 722, and the cases therein cited.

None of our prior decisions is precisely in point with the facts of this case, but when all of the facts and circumstances disclosed by the evidence are considered, we think that they are sufficient to give rise to a reasonable inference of causal connection between the claimant's accident and injury and the disability proved to exist. Research on our part discloses two cases from other jurisdictions involving ruptured disks in which awards were susstained and where, as here, a finding of causal connection between an accidental injury and a ruptured disk was unsupported by medical evidence. *Smith v. Terminal Transfer Co. et al.,* 372 S. W. (2d) 659 (Kansas City, Mo., Ct. App. 1963) ; *Di Fiore v. United States Rubber Co.,* 78 R. I. 124, 79 A. (2d) 925 (1951). No decision contrary to those cited has come to our attention.

The initial award of the hearing Commissioner in this case, dated June 15, 1964, provided for payment of compensation at the rate of $30.00 per week from the date of the accident until the date of the hearing, March 16, 1964, with the employer-carrier to take credit for the weeks the claimant was· suitably employed and for the amounts drawn by her as unemployment compensation benefits during the time she was not employed. The award further provided that compensation at the rate of $30.00 per week should be paid from the date of the hearing until a determination by the Commission that maximum healing had been reached, or until otherwise terminated in accordance with the provisions of law. The hearing following remand was held on December 14, 1965, and the award of the full Commission was filed on June 21, 1966, and, as above pointed out, in addition to making the specific findings of fact as directed, it reaffirmed the earlier award, including the provision for the payment of compensation beyond the date of the initial hearing. The employer-carrier now contends that it was incumbent upon the claimant to prove at the December 1965 hearing that she was then still disabled and that in the absence of such proof on her part, the award cannot stand. Assuming that any exception on the part of the employer-carrier properly raises this question, which is doubtful, it is clear that the issue was not raised below and cannot be asserted for the first time on appeal to this court.

Finally, the employer-carrier asserts error on the part of the circuit court as to a provision in the order dealing with the payment of compensation pending appeal. The brief on behalf of claimant asserts that the order has not been complied with, which assertion is not challenged. Any issue thereabout has now become moot, particularly in view of our disposition of the other questions involved. The exceptions of the appellants are without merit and the judgment of the lower court is, accordingly,

Affirmed.

Lewis and Braisford, JJ., concur.

Moss, C. J., and LITTLEJOHN, J., dissent.

LITTLEJOHN, Justice (dissenting) :

Being of the opinion that the lower court should be reversed, I respectfully dissent to the opinion of Mr. Justice Bussey. We are in agreement, however, on the point that a proper claim was filed with the Industrial Commission within one year as required by the statute.

Except for the statute claimant would have no rights against the employer in this case. Accordingly, claimant can only pursue her rights by complying with the statute which grants them. The statute requires an employee to give written notice of an injury, but provides that oral notice will be permitted if just excuse is shown for failure to, give written notice. This court has given liberal interpretation to these statutory provisions and we have permitted the Commission to accept excuses which certainly only barely met the scintilla rule. As I interpret the cases, this is the first instance in which this court has approved a finding of excusable failure to give notice where there was no semblance of an excuse offered, and indeed in this proceeding, after the case was remanded to the Commission for additional evidence, the claimant elected to remain silent on the issue involved.

This claimant knew that she was required to report an injury. She should not be allowed to disregard the statute and say, "I did not give written notice because I elected to give oral notice instead." The effect of the majority opinion is to amend the statute, which is the province of the legislature and not of this court.

The Commission has found that giving oral notice is alone excuse for failing to give written notice. This is not the type of excuse contemplated by the statute. If giving oral notice in this case is sufficient, then oral notice in all cases is sufficient. This defeats the purpose of the statute.

I am also of the opinion that the notice allegedly given was not a full disclosure of the facts as required by the

statute. Such disclosure as was made is shown by claimant's own testimony as follows:

"Q. Now, tell us what happened?

"A. Well, I started to work at 4:30 and we had the buckets there to fill our magnets up to put in the container—

"Q. A bucket?

"A. Yes—and I filled the bucket up and was bent over when I picked them up a sharp pain hit me in the back and run down my right leg, and so it was hurting me and he had come, the supervisor, Rayford Burdett, came along and asked me if I would work the next day, which was Saturday, and I told him that I would and then he came back along before we took our break along, something after ten or something 'til eleven, the last break we took before we knocked off—and I told him I had picked those magnets up and that a sharp pain come in my back and run down my right leg and I showed him my leg that had swollen up.

"Q. Your leg had swollen?

"A. Yes—I had to undo my shoe and he said well that's all right just come on in, he said you'll be running this job and you'll be sitting down.

"Q. How much does this bucket weigh that you picked up, do you know?

"A. I don't have no idea—I'll tell you what it was—it was a three pound crisco can because this girl had brought it from home, but I don't have no idea how much it weighed."

The opinion overlooks the fact that filing of a written notice would beyond dispute place the employer on notice that a claim may be in the making. That which took place as recited above, served no such purpose.

A notice is not sufficient unless it fairly conveys to the person entitled thereto such information as the law intends, or reasonably puts the employer on inquiry as to such information. If this claimant told her supervisor only what she stated that she told him, I do not think that the em-

ployer was told enough to alert it to investigate the alleged happening so that the case could be defended, and medication provided if such was warranted. It should be noted from the testimony of the claimant herself that she did not seek out her supervisor to give the information, but merely mentioned it to him when he came by where she was working.

The wisdom of the statute requiring written notice is emphasized by this very case. The claim was pursued only after it had become so stale that the supervisor was unable to recall anything about the case of real value to his employer as a defense, or helpful to the Commission in determing the facts.

The shock absorbing provision in the statute which permits, upon a proper showing, an employee to rely on oral notice instead of written notice, is a wise provision but it is subject to much mischief and should not be applied except to prevent an injustice. Examples of excusable failure to give statutory notice are enumerated in 100 C.J.S. Workmen's Compensation § 450 a, p. 331, and include the following: case of mistake, incapacity, inability and unforeseen cause.

The claimant, at the time of the accident and at all times since, has been in complete control of her faculties. A search of the entire record, including her testimony and that of all witnesses, fails to reveal any evidence which points to a logical reason or excuse why she should not have complied with the statute. The Commission cites none and merely holds that she should be excused from giving written notice because she chose to give oral notice. An election of the type of notice to be given is the province of the legislature, not of the claimant.

I would hold as a matter of law that this claim should be barred because no excuse for failing to give written notice has been shown.

No pursuit of the claim was made until August 1963, some eight months after the alleged accident. Her ailment was diagnosed when she went to the hospital the last part of January 1963, as a ruptured disc. She had knowledge of this while the employer did not have knowledge of it and was afforded no opportunity to furnish medical care so as to minimize disability and minimize liability.

"But delays in giving notice after the seriousness of an unjury has become apparent or which prevent the employer from making proper inquiry as to the circumstances of the injury or from sending medical aid so as to reduce or perhaps take away the claim for compensation have generally held to sustain a finding of prejudice." Am. Jur., Workmen's Compensation, Section 383.

The reason that an employer is entitled to prompt full notice of an accident is well stated in the case of *Mintz v. Fiske-Carter Construction Co.*, 218 S. C. 409, 63 S. E. (2d) 50, by the late Chief Justice Stukes, as follows:

"The subject of the requirement of notice of accident is treated at length in 71 C.J. 976 et seq., where it is said at the outset of the discussion that the required notice is not to be treated as a mere formality or technicality and dispensed with as a matter of course, which seems to have been done here by the commission. It is also the subject of a series of valuable annotations in American Law Reports, the last in 145 A.L.R. 1263. It is concluded there, upon many authorities, that the provision for notice should be liberally construed in favor of the claimants, but there are limitations upon that rule and the statutory requirement cannot be disregarded altogther. Its purpose is at least twofold; first, it affords protection of the employer in order that he may investigate the facts and question witnesses while their memories are unfaded, and second, it affords the employer opportunity to furnish medical care of the employee in order to minimize the disability and consequent liability upon the employer. 145 A.L.R. 1267. See also,

58 Am.Jur. 826 et seq., Workmen's Compensation, Sec. 375 et seq."

Both the spirit, if not the absolute letter of the statute and common fairness required that she report the diagnosis of a ruptured disc to her employer. She not only did not report the matter to her employer, but she denied that she had suffered any definite injury. Dr. Halford testified that his record .reflected "Patient denies history of definite injury; claims insidious onset." He further testified * * "She told me at that time that her pain had been there for three weeks; so that would date the onset to early January of '63." The alleged accident was about six weeks before the statement made to the doctor. The claimant did not deny giving such history to her own doctor. The employer has been prejudiced as a matter of law by failure of claimant to give proper notice.

The only reasonable inference to be drawn from the whole of the testimony is that there is no competent evidence of any disability suffered by the claimant causally connected with her employment. She relies entirely on her own lay testimony to prove her contention that she picked up a bucket of magnets on December 14, 1962, and that this ruptured a vertebra in her back, as diagnosed six weeks later, at which time she denied that she had had an accident and stated that the onset was insidious. There is no competent evidence from which a reasonable inference can be drawn that the bucket with its weight, in this case, would most likely rupture the disc of a person who picked them up. It is common kitchen knowledge that a three pound Crisco bucket will hold slightly more than three pints liquid measure. Nor can one conclude from the evidence that the weight of the magnets is great. There are two persons who were present and knew about the weight of the bucket. Claimant said: ", but I don't have no idea how much it weighed." The supervisor, Mr. Burdette, was asked: "It

would weigh about how many pounds?" To this question he replied: "Five—six—seven."

Viewing the evidence in the light most favorable to the claimant as we are required to do, the record anchors down the weight of the magnets involved to a maximum of seven pounds, which is less than the weight of a gallon of water.

It is well settled that a layman may prove causal connection between a happening and an injury without medical testimony, but there are limitations, and it is not every set of facts which gives rise to the application of this rule. If claimant's contention is consistent with medical experience there is no reason why she should not have asked her own doctor, who was on the stand, a hypothetical question to establish her contention. The burden of proof as relates to causal connection was upon her.

It is obviously the claimant's contention that lifting the bucket ruptured the disc, but a study of the record shows that actually not even she testified that it did rupture the disc or that in her opinion it ruptured the disc. For related cases concerning lay testimony on medical questions see *Hines v. Pacific Mills et al.*, 214 S. C. 125, 51 S. E. (2d) 383, and *Ashley v. South Carolina Highway Department*, 213 S. C. 354, 49 S. E. (2d) 505.

The backbone and its disc are involved and complicated. Under the facts of this case her own testimony is not competent to establish causal connection.

The lower court should be reversed, and I would so hold.

Moss, C. J., concurs.