15891

RADCLIFFE v. SOUTHERN AVIATION SCHOOL *ET AL.*

(40 S. E. (2d), 626)

*Messrs. Baskin & Cothran* and *Henry C. Jennings,* all of Bishopville, for Appellant,

*Messrs. Edens & Weinberg,* of Columbia, for Respondents,

November 27, 1946.

Mr. Associate Justice Taylor delivered the unanimous opinion of the Court.

This case comes to this Court upon appeal from an order dated October 5, 1945, by the Honorable G. Duncan Bellinger, Judge of the Fifth Judicial Circuit, reversing an award of the South Carolina Industrial Commission. A careful study of the record shows that the learned Circuit Judge went into the matters presented very thoroughly, and it is difficult to see how he could have reached any conclusion

other than he did. The Order was most thorough, and is hereby adopted as the Order of this Court.

Let it be reported herewith.

Judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and OXNER concur.

## ORDER OF JUDGE BELLINGER

This case comes before me upon appeal by the Southern Aviation School, Employer, and Great American Indemnity Company, Insurance Carrier, defendants, from the award of the full Commission of the South Carolina Industrial Commission for disability and difigurement, rendered August 8, 1944.

The cause was first heard before Commissioner W. Raymond Johnson at Camden, South Carolina, on April 27, 1944, and he filed his award on June 15, 1944, and from this award an appeal was taken to the full Commission, which affirmed the award of Commissioner Johnson with certain modifications of findings of fact. In the time prescribed by law the case was appealed to the Court of Common Pleas for Kershaw County.

The evidence before the commission shows that the claimant, B. J. Radcliffe, had for several months prior to December 12, 1943, when he suffered a stroke of paralysis, been working for Southern Aviation School as a guard. At the time of the occurrence, out of which the claim arises, claimant's hours of duty were from three o'clock in the afternoon until eleven o'clock at night. He was required to walk posts 5 and 6 for a part of these hours and then shift to posts 3 and 4 for the remaining hours of his tour of duty. When he first began his work with the School he was assigned to one post, but owing to a shortgage of help it became necessary to assign the guards to more than one post and rotate them. On December 12, 1943, while walking one of these

posts, claimant suffered the stroke of paralysis, out of which the claim arose. He testified that the night was clear and that it was "kind of cold"; that when he reached posts 3 and 4 he "was walking, examining the planes and—got excited, and took shortness of breath guarding them". He testified that he had an illness in August, 1942, one in October, 1942, and another in December, 1942, and had been attended by Dr. West. Dr. Blanchard had been treating him for high blood pressure several years before the paralytic stroke in question. That as a result of illness in December, 1942, he had been paid disability insurance, commencing December 21, 1942, by the Connecticut General Life Insurance Company. It was his impression that prior to suffering the stroke of paralysis in question he was under the impression that Dr. West had informed him that he was suffering from the effects of high blood pressure.

Dr. F. A. Blanchard, a witness for the claimant, testified that he had known Mr. Radcliffe for about thirteen years and had been treating him for five or six years previous to December 12, 1943, the time of the alleged accident, for high blood pressure.

Dr. Carl A. West, a witness for the defendant, testified that he had treated the claimant for high blood pressure, nervous condition and his heart's action from October 29, 1942, until December 31, 1942. In February, 1944, Dr. West examined the claimant, and found the blood pressure to be same as that in December, 1942. In the opinion of this doctor the stroke suffered by the claimant, while walking his posts on December 12, 1943, was due to high blood pressure that he had suffered for several years. Upon his examination of the claimant after the stroke he found no external injury of any kind. In his opinion the stroke of paralysis suffered by the claimant could have occurred anywhere as the natural result of high blood pressure. In the record we find the following question asked Dr. West by Commissioner Johnson:

"Just a minute. Let me clear that up. I think we are spending too much time on the high blood pressure prior to the accident, which has already been admitted by everyone. The fact that you have got to determine or break down isn't the fact that he had high blood pressure prior to the accident or how bad he had it, but it is a known fact that he worked for a period of practically a year for the same company on the same job, but on this particular night he was *doubled up*; he was walking two posts when he was only employed to walk one. He had *extra work* put on him that caused him to walk—to cover two posts. Then you have got to determine whether exertion was caused by overloading him with work; that is a fact that has got to be brought out, whether he was walking two posts instead of one. If he had a dormant case of high blood pressure and was able to do his work and then extra work put on him, to cause him to have to do more work in the same amount of time to the point of aggravating the high blood pressure that brought about his stroke, it is compensable, if the high blood pressure was aggravated by the extra work; if there was an aggravation of any pre-existing condition it is compensable." (Italics supplied.)

Under further cross-examination by the defendant's attorney, the following transpired:

"Q. Now you have heard Mr. Radcliffe's statement about what he was doing on that particular night. Would you say in your medical opinion that the ordinary walking of that kind without any excitement, without any alarms in carrying on a job such as he was carrying on—would that in itself be sufficient, in your opinion, to cause a stroke of paralysis?

A. I judge from what the Judge (Commissioner) said he said, although, I didn't get it from Mr. Radcliffe, that he had two—*he did two men's work*. Is that true? If that is true I would be forced to say it possibly might have precipitated—

The Court (Commissioner): He testified that he walked one post at the beginning and then he was put on posts 5 and 6; he was put on posts 5 and 6 due to a shortage of help, due to the sickness of one of the guards. On this particular night he was put on 5 and 6 and then moved to the end of the field on the posts 2 and 3—or 3 and 4—I don't know which it was, walking two posts. He was walking two posts and he only walked one post before.

The Witness: *If that is true* I think I can say that certainly *didn't help his high blood pressure."*

At another point in the examination of Dr. West the following was developed:

"Q. Now, then coming back to Mr. Radcliffe's claim that he was probably walking two posts that night, as I understand walking two posts means that he has certain territory, that he walked on level ground without any alarms or excitement, would you, in your opinion, say that that in itself was sufficient to cause this man to have a stroke of paralysis?

A. I wouldn't say that it *specifically caused* it.

Q. Isn't it true whether he had a stroke, or didn't have a stroke would be largely controlled by his own actions?

A. Yes, sir.

Q. In other words, a man suffering from that condition can put himself in an excitable condition that might precipitate it?

A. Yes, sir."

Again the witness testified that in claimant's condition he would have probably eventually suffered a stroke. On cross examination the doctor was asked the question.

"Q. Doctor, the exertion of walking and excitement could have caused his blood pressure to go up?

A. Yes, sir, exertion."

He stated further that if the blood pressure had gone up that *could possibly have caused the stroke.*

A. B. Campbell, who was Chief of the guards, and in charge of them, testifying for the defendant, stated that in December, 1943, the guards were rotated on their posts. Claimant's regular assignment was post 6, and at night he was rotated on that post and another post. The duty of the guard was to look out for fires and to see that nothing took place that would be a detriment to the airplanes and other property. The reason assigned by Chief Campbell for rotating the guards was that it was done in order that a guard would not be subjected too long to cold weather. He testified that there was a guard house provided with a heater where the guards could go and get warm. The guards were not required to walk fast, they did not carry an extra weight and that they had one day off a week. At the time the claimant suffered the stroke of paralysis there had been no alarms of any kind and the planes were grounded. Nothing had occurred that would have required the claimant to walk his post at a faster rate than usual. On the occasion in question the mechanics were working on the planes and nothing occurred to cause the claimant, or anyone, to become excited. The claimant would commence walking at post 3 and then go on his next post and return to his original post. This caused the claimant to walk in a circle. When the claimant would walk to the end of one post and enter upon the other another guard followed him on the post that claimant had left. The claimant did not walk backwards and forwards on one post, but he started on post 3, continued to post 4, then to post 5 and from there to post 6 and then back to post 3, forming a circle.

. The appeal involves seven separate exceptions with several sub-divisions thereto. These exceptions are substantially the same exceptions taken from the award of the Single Commissioner to the Full Commission. For a final disposition of this appeal it is not necessary that this order set out in detail the grounds for appeal. In the argument before me these exceptions were generally placed under two headings, as follows:

(1) Did the claimant suffer an accident within the meaning of the Workmen's Compensation Law?

(2) Was it proper for the hearing Commissioner to render an award for bodily disfigurement without any evidence thereabout, and without notice to the Employer and Carrier that a claim was made for bodily disfigurement?

For a proper disposition of this cause it is only necessary to consider the first question raised. In the finding of facts the hearing Commissioner found, and this was concurred in by the Full Commission:

"That the claimant suffered an injury or accident on December 12, 1943, which did arise out of and within the course of his employment with the defendant company, and that the said accident resulted in a stroke of paralysis which was received by the claimant while he had been performing *double duties,* and subjected himself to *extreme cold weather* and *exerted himself too strenuously* and thereby caused aggravation and acceleration of the pre-existing condition of his high blood pressure." (Italics supplied.)

The claimant, at the outset, is faced with the burden to show by competent testimony, not only the fact of the injury, but that it occurred in connection with his employment. And he must furnish substantial evidence from which the reasonable inference can legally be drawn that the injury arose out of and in the course of his employment. The award by the Commission must be based upon something more than speculation, surmise or conjecture, it must be based on evidence.

The Court can review the findings of the Commission only for the purpose of determining whether there is any competent substantial evidence to support the findings, and if there is a scintilla of competent evidence to uphold the findings the reviewing Court must do so. Likewise, if the facts proved are capable as a matter of law of sustaining inferences drawn from them by the Com-

mission its findings are conclusive in the absence of fraud. *Rudd v. Fairforest Finishing Co. et al.,* 189 S. C., 188, 200 S. E., *727; Jeffers v. Manetta Mills et al.,* 190 S. C., 435, 3 S. E. (2d), 489; *Cagle v. Judson Mills et al.,* 195 S. C., 346, 11 S. E. (2d), 376; *Buckman v. International Agricultural Corp. et al.,* 196 S. C., 153, 13 S. E. (2d), 133; *Green v. City of Bennettsville,* 196 S. C., 313, 15 S. E. (2d), 334; *Lanford v. Clinton Cotton Mills·et al.,* 204 S. C., 423, 30 S. E. (2d), 36; *Elrod v. Union Bleachery et al.,* 204 S. C., 481, 30 S. E. (2d), 73; *Crawford et al. v. Town of Winnsboro et al.,* 205 S. C., 72, 30 S. E. (2d), 841; *Jones v. Anderson Cotton Mills et al.,* 205 S. C., 247, 31 S. E. (2d), 447; *Branch et al. v. Pacific Mills et al.,* 205 S. C., 353, 32 S. E. (2d), 1; *Bailey v. Santee River Hardwood Co. et al.,* 205 S. C., 433, 32 S. E. (2d), 365; *Ervin et al. v. Myrtle Grove Plantation et al.,* 206 S. C., 41, 32 S. E. (2d), 877; *Shehane v. Springs Cotton Mills et al.,* 206 S. C., 334, 34 S. E. (2d), 180; *Lewis et al. v. Hamilton Veneer Co. et al.,* 206 S. C., 349, 34 S. E. (2d), 220.

In defining the meaning of the scintilla of evidence rule, in *Crawford et al. v. Town of Winnsboro et al., supra,* the Court quoted with approval from the case of *Turner v. American Motorists Ins. Co.,* 176 S. C., 260, 180 S. E., 55, 56, as follows:

"The meaning of the rule is that there must be some *evidence* arising out of the testimony which elucidates the issues of fact, and which enables the jury to form an intelligent conclusion. It does not authorize the admission of speculative, theoretical, and hypothetical views. * * *"

"In the case of *Taylor v. Railway Co.,* 78 S. C., 552, 556, 59 S. E., 641, 643, this Court said: 'A scintilla of evidence is *any material* evidence that, if true, would tend to establish the issue in the mind of a reasonable juror'. (Italics added.)"

"Whilst adhering to the scintilla rule, this Court has recognized a rule supplemental to the scintilla rule which is

thus propounded in the case of *National Bank v. Thomas J. Barrett, Jr., & Co.,* 173 S. C., 1, 174 S. E., 581, 582: 'If it be conceded that there may be deduced by a process of unusual *finesse* of reasoning that there is a scintilla of evidence * * * nevertheless there is another rule, more founded upon common sense and reason, to the effect that when only one reasonable inference, not just one inference, but one reasonable inference, can be deduced from the evidence, it becomes a question of law for the Court, and not a question of fact for the jury.' "

It is true that facts may be established by circumstantial evidence as well as direct evidence, and if the circumstances surrounding the injury sustained by the claimant are such as to lead an unprejudiced mind reasonably to infer that it was caused by accident, the evidence need not negative all possible causes of the injury. *Jeffers v. Manetta Mills et al.,* 190 S. C., 435, 3 S. E. (2d), 589.

In *Cagle v. Judson Mills, supra,* the Court said:

"In order to sustain the award of the Industrial Commission 'it must be founded on the evidence and cannot rest on surmise, conjecture or speculation'. As was stated in *United States Fuel Co. v. Industrial Commission,* 310 Ill., 85, 141 N. E., 401, 402, 'Liability under the Compensation Act cannot rest upon imagination, speculation or conjecture. * * *' It must be based upon facts established by the evidence."

The hearing Commissioner concluded that the injury to claimant arose through an accident, and that it arose out of the claimant being subjected to "extreme cold weather", strenuous exertion, and "while performing double duty", which aggravated and accelerated the pre-existing condition of high blood pressure. These conclusions were concurred in by the entire Commission. Notwithstanding the concurrence of the entire Commission in these conclusions, there being no competent evidence in the record

upon which they are based, such conclusions cannot be substituted for evidence. *Parrott v. Barfield Used Parts*, 206 S. C., 381, 34 S. E. (2d), 802.

Bearing in mind the foregoing principles announced, we now must determine whether or not there was any competent testimony before the commission tending to show that the injuries to the claimant was the result of accidental means arising out of his employment.

Section 7035-2(f), Vol. 4, Code of Laws of South Carolina, 1942, provides under "Definitions".

"Injury and personal injury shall mean only injury by accident arising out of and in the course of the employment, and shall not include disease in any form except where it resulted naturally and unavoidably from accident."

Our Court has defined the word "accident" as used in the Workmen's Compensation Act as follows:

"The word 'accident' as used in Workmen's Compensation has been defined as an unlooked for and untoward event which is not expected or designed by the person who suffered the injury. Honnold, on Workmen's Compensation, Vol. 1, Section 85, page 85, says: 'The word "accident" refers to the cause of the injury, and is here used in its ordinary and popular sense as denoting an unlooked for mishap or untoward event, which is not expected or designed by the workman himself, a physiological injury as the result of the work he is engaged in, an unusual effect of a known cause, a casualty. It implies that there was an external act or occurrence which caused the injury or death. It contemplates an event not within one's foresight and expectation resulting in a mishap causing injury to the employee. Such an occurrence may be due to oversight and negligence. It may be due to carelessness, not wilful, to fatigue, or to miscalculation of the effects of voluntary action.' " *Green v. City of Bennettsville, supra*, and *Lanford v. Clinton Cotton Mills, supra*.

Before one can be granted an award under the Workmen's Compensation Act for an injury suffered, he must show that his injury arose out of the employment and in the course of his employment. There is no question raised here that the accident suffered by the claimant was while in the course of his employment, but the question is whether or not the injury suffered arose out of his employment. When the Act speaks of arising out of the employment it has reference to the origin and cause of the injury. *Branch v. Pacific Mills, supra; Eargle v. South Carolina Electric & Gas Co. et al.,* 205 S. C., 423, 32 S. E. (2d), 240; *Fountain v. Hartsville Oil Mill et al.,* .... S. C., ...., 32 S. E. (2d), 11.

The claimant and the Commission relied strongly upon the testimony of the doctors to show that the exertion of walking caused the stroke of paralysis and that the cause of the paralysis therefore arose out of the employment. But they have overlooked the holding in *Branch v. Pacific Mills, supra,* touching upon this class of testimony, wherein the Court said:

"We quote with approval from the case of *Fink v. Sheldon Axle & Spring Co.,* 270 Pa., 476, 113 A., 666, 667, the case involving the Pennsylvania Workmen's Compensation Act, 77 P. S., Paragraph 1, *et seq.,* wherein the Court said: 'It must be understood, however that when in cases of this class expert testimony is relied on to show the connection between an alleged cause and a certain result, it is not enough for the doctors to say simply that the ailment in question *might* have resulted from the assigned cause, or that the one *could have brought* about the other; *they must go further and testify at least that, taking into consideration all the attending data, it is their professional opinion the result in question must probably come from the cause alleged.'* " (Italics supplied.)

A study of the medical testimony in the instant case clearly shows that it does not measure up to the require-

ments as laid down in the *Branch case,* in order that that testimony may have some probative value.

Both Dr. Blanchard and Dr. West, in testifying as to the relationship between the blood pressure of the claimant and the walking of two posts to the stroke had used such expressions as *"that could produce the stroke"*; *"it possibly might have precipitated"* (the stroke); that it *"did not help his high blood pressure"*; "wouldn't say that it specifically caused it" (the stroke); that if his blood pressure went up that could have *"possibly"* caused the stroke.

When many of these answers were given they were in reply to questions embodying a statement of supposed facts that are not borne out by the testimony. When Dr. Blanchard gave his opinion, he was asked the question which assumed that the claimant was under emotion or excitement, was undergoing unusual exercise and that he had hardening of the arteries. The doctor replied that those conditions could produce a stroke.

Dr. West was asked to assume that the claimant had been doing double work—the work of two men—and had extra work put upon him. The assumptions of fact in these hypothetical questions asked of the doctors are not borne out by the evidence in this case. The evidence in the case does not show that the claimant was required to do any more work in patrolling the two beats than he was required to do in patrolling one beat. Instead of walking one beat backwards and forwards, he continued to walk forwards covering two beats, walking in a circle. He was not required to walk any one post any shorter period of time necessitating an increase in his rate of walking. He did not walk any greater distance in covering the two beats than he would have in walking one beat, walking that beat backwards and forwards. The result was his work was not increased. He was not required to work longer hours. There is absolutely no evidence in the case as to the happening of anything to cause the claimant to become excited while on duty. He was merely looking

at the planes on the ground when he says he became excited. It is very evident from the testimony that only one deduction can be drawn therefrom and that is that the disease from which claimant was suffering caused him to become nervous and emotionally upset, thereby bringing on the stroke.

As to the finding of the Commissioners that the claimant was subjected to "extreme cold weather", there is no evidence whatsoever in the case to support that finding. The only evidence touching upon the temperature was given by the claimant and he stated that the night was "kind of cold".

If we would merely take excerpts from the record in the case and taking as a part of the evidence the erroneous assumptions contained in some of the hypothetical questions put to the doctors, there might be some evidence upon which to sustain the award. But when we take the evidence as a whole, that is the competent evidence, we cannot find therein any evidence upon which to base the conclusion reached by the Commissioners.

This Court is not unmindful of the decisions of our Court which hold that the aggravation of a pre-existing disease constitutes an accident within the meaning of the Workmen's Compensation law. However, the aggravation of the pre-existing disease must arise from some external force, and must not be caused by the natural result of the pre-existing disease.

A study of the record in this case, bearing in mind the decisions of our Court defining the term, fails to disclose any evidence whatsoever of an "accident" occurring to the claimant. The cases of *Cagle v. Judson Mills, supra,* and *Branch v. Pacific Mills, supra,* are most applicable to the facts and principles in the instant case. The evidence in the record is insufficient to establish causal connection between the employee's work and the stroke of paralysis suffered by him while on guard duty as an employee of the defendant, Southern Aviation School.

For the reasons herein stated, the award of the Commission made to the claimant for disability and bodily disfigurement is reversed.