16176

ELROD v. WELLINGTON MILLS, INC., *ET AL.*
(51 S. E. (2d) 620)

*Mr. Stephen Nettles,* of Greenville, *for Appellants,*

*Mr. S. Eugene Haley,* of Anderson, *for Respondent,* 

January 28, 1949.

STUKE, Justice.

Respondent was awarded workmen's compensation on account of the death of her husband, Tillman Elrod, who was employed by the appellant cotton mill as its farm and outside overseer. He worked until about two weeks before his death of diabetes and complications which included gangrene in his left foot. The record indicates that he was faithful in attendance upon the duties of his employment and careless with respect to his health. One of the doctors described him as a very large and strong man, contemptuous to physical ills, which caused him to be neglectful of diet directions and prescribed insulin treatments.

There was evidence from his wife and several farm laborers that a mule stepped on his foot when he was at work some eight or ten months before his death but he did not report the accident to his employer. He was familiar with the rule requiring the report of even minor accidents and during the year 1945, in which he died on December 2nd, he reported to the president of the mill, with whom he was in daily contact, the fact that a horse threw him on May 7th, which bruised him but caused the loss of no time, and another accident on Oct. 1st when he was cut on the leg by a knife, for which he received only first aid and again lost no time. About a week before he became disabled in his

last illness, the mill president noticed that Mr. Elrod was wearing a shoe with the top cut out and he was asked if he had hurt his foot, to which he replied in the negative and said his foot was just sore and would be all right.

The claim was resisted upon the grounds that there was no evidence of causal connection between the alleged accident of eight or ten months before and his subsequent death from diabetes and complications, and that there was never any report of the accident. The last ground relates to sections 7035-25 and 7035-26 of the Code of 1942.

Both grounds of defense were overruled by the Industrial Commission and the usual award was made. Upon appeal this was affirmed by the Court of Common Pleas. The appeal here is also upon both grounds but decision requires only consideration of the first, to wit, the lack of evidence of causal connection between the accident and death eight or ten months later. This essential was found by the lower tribunals from the evidence of claimant, who is the widow of the deceased employee, corroborated by fellow-employees, that Mr. Elrod's foot never got well after the old accidental injury to it. But the medical evidence is such, especially in view of the lapse of time between, as to clearly negate causal relation or connection between the injury and the long subsequent death. It will be reviewed at some length.

Dr. Harris saw the deceased first in his last illness on November 19, 1945, which was about two weeks before death. He treated him four or five days and was then out of town for about the same length of time, during which the patient was cared for by Dr. J. B. Latimer who referred him back to Dr. Harris upon the latter's return. Upon the insistence of Dr. Harris the deceased thereafter entered the hospital and became the patient of Dr. J. F. Rainey.

Drs. Harris and Latimer were claimant's witnesses. The former testified that he had treated the deceased during the

last four or five years of his life for chronic diabetes, high blood pressure and heart trouble. He was a difficult patient, would eat and drink soft drinks imprudently, aggravating his diabetic condition, whereupon he would return to Dr. Harris who would increase his regular amount of insulin, get him sugar-free and in three or four months he would come back in bad condition again. Dr. Harris never treated him for traumatic injury and his patient had never reported any such to him. At the first of his last treatment, Nov. 19, Mr. Elrod came to him from his work on account of pain in his foot which was swollen and discolored, but he would not leave his work. The doctor said that at that time he was "loaded with sugar" and he gave him insulin at the office. This treatment was from the 19th to the 23rd of Nov. after which Dr. Harris was away four or five days, as said; during which Dr. Latimer treated the patient. Mr. Elrod's foot was then gangrenous. Upon Dr. Harris' return he "made", as he said, Mr. Elrod go to the hospital which he had refused to do upon Dr. Latimer's advice. He was then turned over to Dr. Rainey. The gangrene in his foot progressed; he developed a diabetic coma, then pneumonia, and died. Dr. Harris heard nothing of, and saw no evidence of, a traumatic injury to his patient's foot and said that gangrene would develop in a diabetic's foot with or without direct injury to it; in such cases diabetes causes gangrene by choking off the blood vessels and the condition is very common in diabetics. The testimony of Dr. Harris when considered as a whole, as it must be, negatives any causal connection between a traumatic injury and Mr. Elrod's death or acceleration of it.

Dr. Latimer, also testifying for claimant, first saw Mr. Elrod on Nov. 20th and found the third toe of his left foot gangrenous but saw no sign of traumatic injury. He saw the patient last on Nov. 26th when he directed him back to Dr. Harris who had returned to his office. His examination disclosed four-plus sugar and he recommended that the

patient go at once to a hospital, which he refused to do. Dr. Latimer repeated the recommendation to Mr. Elrod's son and daughter, but without compliance. In answer to the question whether the condition of Mr. Elrod's foot was new or old, the witness said: "From the history that he gave me, this toe had not been sore but just recently, the last few weeks, last week or so, but had gradually gotten worse and pained him and it had turned a brownish black when I saw him." The cross examination of Dr. Latimer is here quoted:

"Q. Doctor, did he say anything about a traumatic injury to that toe? A. Not one word.

"Q. Or to that foot? A. Not one word.

"Q. Did you see any sign of a traumatic injury? A. Absolutely not.

"Q. You attributed it to the diabetes? A. Yes, sir.

"Q. The direct result of the diabetes? A. Yes, sir."

Appellants produced as their witness Dr. Rainey who treated Mr. Elrod only after he entered the hospital the night of Nov. 28th where he afterward died on Dec. 2nd. From the doctor's record which he read in evidence there appeared the history that the trouble in the patient's third toe of his left foot began about a week prior to admission to the hospital. He was very painful over his entire body, he had high blood pressure and his heart was bad, indicating failure of it. The cause of death was terminal pneumonia; and diabetes, gangrene and heart disease were contributing factors. Dr. Rainey was not told of, and saw no evidence of, any traumatic injury to the toe or foot; and it was his opinion that for traumatic injury to have had anything to do with the patient's condition, it must have occurred within a week prior to the time he saw the patient. The claimed injury months before was too distant to have had any connection with the patient's condition and death. The witness was firm in his opinion that the injury months before to Mr. Elrod's foot, of which there was evidence only from lay

witnesses, could have had nothing to do with the development of the diabetic gangrene which was present at death.

The case is ruled by the authority of *Hines v. Pacific Mills,* S. C., 51 S. E. (2d) 383, and the earlier decisions there cited. There the claimant, Hines, testified in attempted contradiction of the medical witnesses that his testicle began to swell immediately following the accident, indicating causal connection or acceleration of a pre-existing diseased condition, but the contrary was held as a matter of law and award for loss of the member was set aside. Reference may be had to the extended discussion in that decision for the reasoning and precedents which impelled the result there and likewise govern here. See also for elaboration, *Baker v. Graniteville Co.,* 197 S. C. 21, 14 S. E. (2d) 367.

If, under the evidence, there were doubt of causal connection, or whether decedent's death from disease was accelerated by accidental injury, the doubt should be resolved in favor of compensability and the award allowed to stand. But here there is no evidence of substance to make issue with the unanimous professional opinion of the three medical witnesses that, in effect, the death could not have been caused or accelerated by the accidental injury of eight or ten months before. In this condition of the record the court can only reverse the award. The lack of substantial conflict in the evidence renders the question of causal connection or acceleration of death, which is ordinarily one of fact for the Industrial Commission, a question of law for decision by the Court.

Reversed and remanded for entry of judgment for appellants.

BAKER, C.J., and FISHBURNE, TAYLOR and OXNER, JJ., Concur.