17473

Hazard RICHARDSON, Appellant, v. WELLMAN COMBING COMPANY, Employer, and American Employers Insurance Company, Carrier, Respondents

(105 S. E. (2d) 602)

*Messrs. J. Ralph Gasque* and *William H. Seals,* of Marion, *for Appellant,*

*Messrs. Royall & Wright* and *Charles D. Powers,* of Florence, *for Respondents,*

November 10, 1958.

OXNER, Justice.

This is an appeal from an order of the Circuit Court reversing an award for compensation made by the Industrial Commission. The questions presented are (1) Has the claimant shown that he suffered an injury by accident? (2) If so, did such injury arise out of and in the course of his employment?

The claimant, Hazard Richardson, is approximately 37 years of age. His education did not extend beyond the eighth

grade. After a pre-employment physical examination, he commenced working with the Wellman Combing Company of Johnsonville, South Carolina on October 10, 1955. Prior to that time he was engaged in farming and carpentry. His job with the Wellman Combing Company was that of French comb tender, which required him "to put wool into the combs, keep the combs running, and push the wool from the combs up to the finishers." This necessitated his standing or walking most of the time.

It is undisputed that claimant had had varicose veins for some time. According to his own witnesses there were "knots" or "bulging veins" on each leg below the knee. One of these witnesses estimated the size of these knots to be as "large as the end of my finger." Claimant testified that prior to his employment with the Wellman Combing Company, he suffered no pain from this varicose condition and it had not interfered with the use of his legs but some time after entering into this employment, his legs commenced troubling him and "bothered him worse and worse." On January 17th he consulted a surgeon in Conway who prescribed an elastic stocking which gave him some temporary relief. He continued working and claims that on or about February 12, 1956, while pursuing his normal course of duties, his legs "cramped". He testified that about 4:00 o'clock on the morning of that day, "the cramp struck me from up in my thighs and on down to the bottom of my feet and I couldn't hardly work my feet." He stopped working that morning and went again to see his surgeon who concluded that an operation would be necessary, and on February 15th ligated a number of varicose veins in each leg. Claimant was incapacitated for some time and now claims that he can do very little work requiring the use of his legs.

No medical testimony was offered by claimant. The attending surgeon, a witness for employer and carrier, testified that the cause of varicose veins is unknown; that they "are slowly progressive", that "sometimes they can go years and years and sometimes they break down fast"; that a person may

have large veins and still be able to carry on his work successfully; that ordinarily it would take several years for varicose veins as severe as claimant's to develop; that they "could not have developed in a few weeks but the symptoms might have"; and that standing increases the pressure in the veins and is an aggravating factor. He further testified:

"Q. * * * If a person were walking out on the ground and was well enough to work, and within a few weeks after he started working and walking and standing on a concrete floor he developed these symptoms you would assume it came from walking and working on the concrete floor? A. Yes, I think you would have to assume it played a part in it.

\* \* \*

"Q. Doctor, I want to ask you whether or not any type of job, employment, or hobby or avocation that required a good deal of standing wouldn't eventually have caused this man's veins to break down in the manner you have described? A. Yes."

\* \* \*

"Q. Doctor, I will ask you whether in your experience the varicose vein condition as you have observed it has had any particular connection with the type of work which the people suffering it were doing? A. Well, I do know this. That barbers who stand, and dentists too, have a little higher incidence of it. However, you also get varicose veins on women who don't do anything but sit around at a bridge table all day; but we do know barbers and dentists and waiters do have a little higher incidence of it."

\* \* \*

"Commissioner MacMillan: In this particular case, Doctor, is it probable or possible that his employment at the Wellman Combing Company, apparently standing up most of the time on a concrete floor, did that * * * did his employment aggravate or accelerate the breaking down of these veins?

"The Witness: Well, the only thing that I can say about that is that it is possible that it did; and from the history

* * * and that is what we have to go by, you know, is the history we get from the patient; and the history was that they had become more symptomatic * * * more symptoms, more painful."

From the foregoing testimony the hearing Commissioner found that claimant "had an existing dormant varicose vein condition at the time of his employment with the defendant-employer in October, 1955"; "that continuous standing and walking on the concrete floor during his work operation resulted in an aggravation of the claimant's dormant varicose vein condition, which gradually progressed until he became completely disabled on February 12, 1956"; "that the aggravation of the claimant's existing varicose vein condition arose out of and in the course of his employment and was unexpected, unforeseen, and undesigned." On these findings, an award of compensation was made which in a formal order was affirmed by the full Commission. This award was reversed by the Circuit Judge upon the ground that there was no proof of an injury by accident.

We think the Court below reached the proper conclusion. Prior to his employment with the Wellman Combing Company, claimant had large varicose veins which developed gradually and imperceptibly over a period of several years. The attending surgeon said that there was a possibility of their "breaking down" at any time. Their aggravation did not arise from external force but was caused by the natural result of the pre-existing disease. The development which finally required an operation was not unexpected and did not come suddenly. He was under no particular strain or stress in his work. There was no overexertion. His condition was not the result of any specific happening or event which occurred at any particular time or date, nor the result of the cumulative effect of a series of minor accidents occurring during his employment. As stated by the single Commissioner, "the claimant pointed to no specific date nor specific act which brought about the condition of his legs for which he was operated on." The varicosity from which he

was suffering was not a hazard peculiar to the work in which he was engaged. He would have been exposed to the same hazard had he continued in his former work of farming and carpentry.

The situation here is quite different from that presented in *Strawhorn v. J. A. Chapman Construction Co.,* 202 S. C. 43, 24 S. E. (2d) 116, where a painter in the course of his work was subjected to an unusual and unexpected quantity of lead from paint dust, resulting in lead poisoning from which he died. There the exposure was peculiar to the work in which claimant was engaged.

Also distinguishable on the facts is the case of *Hiers v. Brunson Construction Company,* 221 S. C. 212, 70 S. E. (2d) 211, 220, strongly relied on by appellant. There an employee, who had a cold, suffered a chill while repairing a roof on a cold, rainy day. He later developed pneumonia, from which he died. There was testimony showing that the exposure to which he was subjected in his work caused the pneumonia. It was an illness brought about by a hazard peculiar to the business. It developed suddenly and was the result of a happening at a time which could be definitely fixed. The Court said: "The exposure and chill suffered by deceased was greatly in excess of that suffered by his fellow employees or the public generally as he was on top of a building where he was fair target for the cold rain and wind. Such conditions are calculated to chill and wet one more than being on the ground or about the building generally."

Our conclusion that there was no proof of an injury by accident finds support in the following cases: *Burnett v. Appleton Co.,* 208 S. C. 53, 37 S. E. (2d) 269; *Radcliffe v. Southern Aviation School,* 209 S. C. 411, 40 S. E. (2d) 626; *Miller v. Springs Cotton Mills,* 225 S. C. 326, 82 S. E. (2d) 458.

Nor do we think claimant's condition can be traced to his employment as a contributing cause. The testimony of the attending surgeon is entirely too indefinite to show that his condition arose out of his employment.

A "possibility" is not enough. *Radcliffe v. Southern Aviation School, supra,* 209 S. C. 411, 40 S. E. (2d) 626; *Rivers v. V. P. Loftis Co.,* 214 S. C. 162, 51 S. E. (2d) 510; *Burgess v. Belton Mills,* 215 S. C. 364, 55 S. E. (2d) 292; *Brady v. Sacony of St. Matthews,* 232 S. C. 84, 101 S. E. (2d) 50.

Affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ.