## 17668

Luther L. CROSS, Respondent, v. CONCRETE MATERIALS and
The Travelers Insurance Company, Appellants

(114 S. E. (2d) 828)

*Messrs. Figg, Gibbs & Grimball,* of Charleston, *for Appellants,* 

*Messrs. Steinberg, Levkoff & Spitz,* of Charleston, *for Respondent,* 

*Messrs. Figg, Gibbs & Grimball,* of Charleston, *for Appellants, in Reply,* 

June 13, 1960.

STUKES, Chief Justice.

This is an appeal from award of workmen's compensation. The claim was denied by the Hearing Commissioner who was reversed by a divided, three to two, decision of the Commission, which latter was affirmed by the Circuit Court. Appeal to this Court followed.

Claimant was struck in the face by the crank of a starting engine on the back of a crane. He suffered injuries to his face and teeth but he missed no time from work and the employer paid the medical and dental expenses. At that time and until some days afterward he did not mention the fall from the platform on which he stood, or any injury to his hip. The latter is the basis of the present claim.

The medical experts for claimant and for the appellants agree that he has osteoarthritis of the left hip which antedates the accident. The contention of claimant, which was sustained below, is that the claimed fall which followed the injury to his face aggravated the arthritic condition of his hip and has since disabled him. This brings into play the rule that when the testimony of medical experts is relied upon to establish causal connection between an accident and subsequent disability or death, in order to establish such, the opinion of the experts must be at least that the disability or death "most probably" resulted from the accidental injury. *Baker v. Graniteville Co.*, 197 S. C. 21, 14 S. E. (2d) 367; *Branch v. Pacific Mills*, 205 S. C. 353, 32 S. E. (2d) 1; *Mack v. Branch No. 12, Post Exchange*, 207 S. C. 258, 35 S. E. (2d) 838; *Radcliffe v. Southern Aviation School*, 209 S. C. 411, 40 S. E. (2d) 626; *Ashley v. South Carolina Highway Dept.*, 213 S. C. 354, 49 S. E. (2d) 505; *Rivers v. V. P. Loftis Co.*, 214 S. C. 162, 51 S. E. (2d) 510; *Burgess v. Belton Mills*, 215 S. C. 364, 55 S. E. (2d) 292; *Windham v. City of Florence*, 221 S. C. 350, 70 S. E. (2d) 553; *Brady v. Sacony of St. Matthews*, 232 S. C. 84, 101 S. E. (2d) 50;

*Richardson v. Wellman Combing Co.,* 233 S. C. 454, 105 S. E. (2d) 602; Annotation, 135 A. L. R. 516.

The expert who testified for appellants examined claimant first on Dec. 22, 1958. The accident was on the preceding Oct. 6th. Claimant gave him no history of a fall. Turning to the evidence of the doctor who examined claimant first on April 10, 1959, and testified in his behalf, he recited the history which claimant gave him of the accident on October 6, 1958, and the fall of about six feet from the platform to the ground when claimant landed on his feet, with the most of his weight on his left foot. We quote from his testimony on direct examination: "It is difficult to establish clinically a definite correlation between the accident of October 6, 1958 and the present condition of the left hip. This is because the presence of a disability in the hip was not brought to light until some time after the accident. It is possible, however, that the osteoarthritis was quiescent at the time but was aggravated by the injury."

Under the lead of counsel for claimant the witness went further, as follows:

"Q. If the fall occurred and he landed in a twisted position on the left leg or foot, would that sudden jar awaken the quiescent arthritic condition if it pre-existed?

"A. It is possible.

"Q. It is possible, Doctor, or probable?

"A. It's probable."

On cross examination, the witness said that he realized that "probable" means more likely than "possible" and he appears to have reverted to his first expressed opinion, before the above leading by counsel. Finally, in answer to questions by the Hearing Commissioner, the witness gave the following answers, quoting from the record:

"The Witness: Thank you, sir. What I meant by this is that to make this statement I had to assume that Mr. Cross fell off of the platform and landed with his main weight on his left leg. If that was correct, I could also assume that

he had a quiescent type of osteoarthritis in the hip prior to that because insofar as I know, he had not complained of any trouble in his hip prior to that time. To summarize it, I would be willing to say that if it can be shown that he actually fell like he said he did, that it's possible that the quiescent osteoarthritis was aggravated by the injury."

\* \* \*

"The Witness: (Osteoarthritis) is a condition of degeneration which in some case in some people is a part of the wear and tear of life. It's just a part of the degenerating process of the body. The feeling as I understand it is that it develops after strain over a period of many years. There's one other kind of arthritis, osteoarthritis that I can recall at this particular moment, and that's the traumatic osteoarthritis. In my experience that's been a more rapidly progressing type of arthritis, and I didn't consider it as being a part of this picture."

It is inescapable that the opinion of the witness, as first and finally expressed by him, is that the causal connection here is possible but he was unwilling to opine that it is "most probable." That is the fair appraisal of his testimony. Therefore, the evidence was insufficient to sustain the finding of causal connection, for which the judgment will have to be reversed and the award set aside.

Compare *Daley v. Public Savings Life Ins. Co.*, S. C. 113 S. E. (2d) 758, where there was competent evidence of aggravation of pre-existing osteoarthritis by compensable accident, and award was affirmed; and *Glover v. Columbia Hospital*, S. C., 1960, 114 S. E. (2d) 565, where an accident aggravated dormant cancer and the expert testimony met the "most probable" rule, which it did not in the case *sub judice*.

Apparently fearing the inadequacy of the medical testimony, claimant cites *Ballenger v. Southern Worsted Corp.*, 209 S. C. 463, 40 S. E. (2d) 681, and contends that, disregarding the expert medical evidence, the testimony of claimant and his wife that he suffered symptoms in his hip

only after the accident is sufficient to sustain the finding of causal connection. In the first place, the argument overlooks the testimony of claimant and his wife that he was troubled with the same leg in 1946, that it went "limber" and he lost the use of it for about three months, which he attributed to the extraction of teeth and accompanying injection of novocain. He testified that in walking then he would "swing it and set it down—I mean just the knee part." Tr. f. 121. In the second place, in *Ballenger's case* expert testimony was not relied upon by him, as here; it was a simple accident by which very hot liquid dye entered the eyes of the injured workman and he was as competent to testify as to his ability to use them before and after as was any expert. The case is distinguished here as it was in *Ashley v. South Carolina Highway Dept., supra,* 213 S. C. 354, 49 S. E. (2d) 505, 507, from which we quote: "In *Ballenger v. Southern Worsted Corp., supra,* an award for impairment of vision was sustained solely upon lay testimony, although the medical testimony was positively to the effect that the condition of claimant's eyes was in no way related to the accident. A like situation is found in the case of *Poston v. Southeastern Const. Co.,* 208 S. C. 35, 36 S. E. (2d) 858. A reading of these cited cases will show, however, that the evidence or lay testimony was far stronger there than here. In those cases, the resultant disability was not invisible, but was to a considerable degree external and objective, and subject to observation." See also, *Hines v. Pacific Mills,* 214 S. C. 125, 51 S. E. (2d) 383.

The *ratio decidendi* of the opinion and award of the Commission, relating to the facts, appears from the following excerpt: "It is true that the record is contradictory in many respects and that doubt is cast upon the testimony for both sides; however, it is a well settled principle in our State that the benefit of any doubt should be resolved in favor of the claimant and here we so resolve the question of any doubt in favor of the claimant."

446

This appears to be an inadvertent confusion with the rule that the compensation *law* will be construed liberally in order to effect its beneficent purpose. 58 Am. Jur. 595, Workmen's Compensation, sec. 27; 19 S. C. Digest, Workmen's Compensation, 51 *et seq.*, p. 486 *et seq.* However, our rule which is applicable to the finding of facts is that a claimant must establish by the preponderance of the evidence the facts which will entitle him to an award; the burden of proof is upon him. He cannot prevail by the resolution of doubts. *Fowler v. Abbott Motor Co.*, S. C., 113 S. E. (2d) 737, and cases cited. Others may be found in 19 S. C. Digest, Workmen's Compensation, 1339, 1340, 1409, pp. 541, 546; 58 Am. Jur. 856, Workmen's Compensation, sec. 433. "The burden of showing that a pre-existing infirmity or diseased condition was aggravated by the injury complained of rests upon the claimant,"—58 Am. Jur. 859. The better rule, and that which we follow, is stated in 100 C. J. S., Workmen's Compensation, § 547 (7), pp. 602, 603, as follows:

"Under other authority, the rule of liberal construction of the compensation acts in favor of the employee, * * * does not dispense with the necessity of evidence to support the award, or of making proof prerequisite to recovery, does not permit a court to award compensation where the requisite proof is lacking, and does not make the rule as to the measure of proof or the sufficiency of evidence different from the rule in ordinary cases or in other civil suits, so that, despite such liberality, the facts relied on must be proved with the same certainty as in other civil cases. So, the rule of liberal construction has been held not to apply to the evidence offered, or required, to establish the claim, or to the function of the commission in hearing evidence or in resolving conflicts in the testimony, and does not operate to distort the proofs or to make the facts other than as they are. A liberal construction of the evidence cannot be substituted for failure of proof of any essential element of the claim; and the preponderance of evidence

rule has been held not to require, as a matter of law, that doubts arising from the evidence be resolved in favor of one party or the other."

Respondent concedes in his brief that the commission was in error in the above quotation from its award, but contends that it was harmless error.

It has been mistakenly said in one or more of our decisions (e. g., by the present writer, in *Elrod v. Wellington Mills, Inc.,* 214 S. C. 171, 51 S. E. (2d) 620) that doubt of causal connection between injury and death or disability should be resolved in favor of compensability. That is error because it would found a conclusion of fact upon doubt whereas such finding must be upon evidence, not doubt. It is unwarranted application of the universal rule of liberal construction of the statutes in favor of compensability. There is no sound reason for the translation of the rule of liberal construction of the law to the finding of the facts to the end that doubt with respect to the latter shall be resolved in favor of the claimant. Doubt, as the foundation of a factual finding, can hardly be distinguished from surmise, speculation and conjecture which countless cases have condemned as a substitute for facts and legitimate inferences. Conviction, not doubt. is the proper basis of a conclusion of fact. The erroneous statement in the *Elrod case* was harmless dictum because the award was reversed; and it was not cited by court or counsel in the record or briefs in the instant case. The writer takes the responsibility for repetition of the error in *Burgess v. Belton Mills, supra,* 215 S. C. 364, 55 S. E. (2d) 292, in which the supposed authority of the *Elrod case* was cited. Again, it was harmless dictum as the award was also reversed in that case. The resolution of doubts referred to in *Baldwin v. Pepsi-Cola Bottling Co.,* 234 S. C. 320, 108 S. E. (2d) 409, referred to the construction of the law; the facts were not in dispute.

> Some courts apply a "doubt" rule in reviewing factual findings of a commission, and their decisions are cited for the following in 100 C. J. S., Workmen's

Compensation, § 763(2) pp. 1176, 1177: "* * * Any doubt as to whether the evidence sustains the award must be resolved in favor of the determination of the commission." Our rule is different and has been many times applied. It is that the court will affirm a factual finding of the commission if there is any competent evidence in the record to sustain it, and reverse only if there is not. 19 S. C. Digest, Workmen's Compensation, 1939, p. 576.

The judgment is reversed and the award of the Industrial Commission set aside.

TAYLOR, OXNER, LEGGE and MOSS, JJ., concur.