17801

Bailey W. McCARTY, Respondent-Appellant, v. KENDALL COMPANY and Liberty Mutual Insurance Company, Appellants-Respondents

(120 S. E. (2d) 860)

494

*Messrs. Grier, McDonald, Todd, Burns & Bradford,* of Greenwood, *for Appellants-Respondents,*

*Messrs. W. Ray Berry,* of Columbia, and *J. Roy Berry,* of Johnston, *for Respondent-Appellant,*

*Messrs. Grier, McDonald, Todd, Burns & Bradford,* of Greenwood, *for Appellants-Respondents, in Reply,*

*Messrs. W. Ray Berry,* of Columbia, and *J. Roy Berry,* of Johnston, *for Respondent-Appellant, in Reply,*

July 6, 1961.

Oxner, Justice.

This is a workmen's compensation case. On May 5, 1958, claimant, Bailey W. McCarty, suffered personal injuries as a result of slipping and falling during the course of his employment. After being treated by a local physician for a few days, he was taken on May 9th to a hospital in Greenwood, South Carolina, where he remained until May 21, 1958. He continued to suffer pain and after returning home from the hospital remained in bed most of the time until July 14th, when he went back to work on a limited scale and continued to work until September 10, 1958. Shortly thereafter he was examined by a physician in Columbia, South Carolina, who discovered that he had a ruptured intervertebral disc for the correction of which surgery was performed in a Columbia hospital. He filed a claim for compensation and on December 23, 1958, an award was made in which it was determined that claimant had sustained a compensable injury to his back. He was awarded temporary total disability but since he had not at that time fully recovered, the questions of permanent disability and disfigurement were left open. There was no appeal from this award.

On February 15, 1959 claimant returned to light work. On March 12, 1959 a further examination at Columbia disclosed that he had a kidney stone blocking the left ureter. He was hospitalized and the stone removed. Complications followed this surgery necessitating rehospitalization on two subsequent occasions during the spring. Claimant was disabled by reason of this kidney condition from March 11, 1959 until he returned to his former employment on August 3, 1959.

During the fall of 1959 hearings were held to determine what compensation should be awarded on account of the ruptured disc and whether compensation should be allowed for the disability and hospitalization resulting from the removal of the kidney stone. The theory of the claimant was

that the formation of this stone was brought about by the immobilization incident to the treatment for the injury sustained on May 5, 1958. On December 29, 1959, the hearing Commissioner filed an award in which he found that claimant had suffered a 15% general partial disability but no loss of wages; that compensation should be allowed for the disability and hospitalization resulting from the removal of the kidney stone; and that claimant had sustained a serious bodily disfigurement for which $825.00 was awarded. The employer and carrier appealed to the full Commission which affirmed the award of the hearing Commissioner in all particulars except the allowance for disfigurement which was increased from $825.00 to $1,500.00.

On appeal by the employer and carrier to the Circuit Court, the Judge concluded that the full Commission was without authority to increase the amount fixed for disfigurement inasmuch as the claimant did not appeal from the award made by the hearing Commissioner. Accordingly, he set aside the award of $1,500.00 for disfigurement made by the full Commission and reinstated that made by the hearing Commissioner. In all other respects, the award of the full Commission was affirmed.

From the order of the Circuit Court, both parties have appealed. By appropriate exceptions the employer and carrier contend that there was no causal connection between the formation of the kidney stone and the injury sustained by claimant on May 5, 1958 and, therefore, the Industrial Commission erred in making any allowance for hospitalization and disability resulting from its removal. No question is raised concerning compensation for the back injury. Claimant contends that the Circuit Judge erred in reducing the award for disfigurement from $1,500.00 to $825.00.

We shall first consider the contention of the employer and carrier that claimant failed to establish a causal connection between the original injury and the formation of the kidney stone. Claimant's witnesses on this issue

were Dr. William T. Barron, a urologist of Columbia who removed the kidney stone, and Dr. W. W. Ledyard, a neurosurgeon of Columbia who performed the operation for the correction of the ruptured disc. Both of these experts agreed that immobilization for a long period of time has a tendency to cause the formation of kidney stones. Dr. Ledyard testified that the period of immobilization necessary to cause a stone to form varies according to the degree of immobilization, diet and the amount of calcium in the system. On the question of causal connection, Dr. Barron was not as positive as Dr. Ledyard. He testified:

"Q. Now, Doctor, summarizing your testimony, would it be fair to say that the operation of March the 11th was for the removal of a stone, and the result thereafterward of the infection? A. That's right.

"Q. And that the stone could have very easily been the result of his immobilization due to the accident which he sustained on May the 5th, 1958? A. That's a possibility. Nobody could testify that it was not the result of the accident."

The pertinent testimony of Dr. Ledyard on causal connection was as follows:

"Q. Now, Doctor, if we had an individual who received an injury and because of that traumatic injury was immobilized and very shortly after he received this injury was cystoscoped and the cystoscope revealed no stones, yet after this period of immobilization he thereafter was cystoscoped and found to have stones, in such a situation, would you say that it is most probable that immobilization caused the stones?

"Mr. McDonald: Now, just one question. Is my objection carried through?

"The Court: All right.

"The Witness: I would say, to modify your question slightly, that the immobilization, I would feel, was certainly a large factor in production of the stones, although it may not have been the only factor.

"By Mr. Berry:

"Q. It would certainly have been a contributing factor to a large degree? A. That's correct, I would feel so."

On cross-examination Dr. Ledyard testified:

"Q. And you subscribe to the opinion Doctor Barron gave, I suppose, that kidney stones can form rapidly over a period of several months or over a period of years? A. That's correct, sir.

"Q. And that we do not know when this stone was formed in Mr. McCarty? A. I'm certainly in agreement with it. The only additional point I would make is that Doctor Bates, on his cystoscopy which preceded Mr. McCarty's period of immobilization, which was the beginning of that period, reported it showed no evidence of stones, so I would say in Mr. McCarty's instance, there would be most likely that the stone forms sometimes subsequent to that period. This is assuming the report I had from Doctor Bates is correct, of course."

Further in the cross examination of Dr. Ledyard, we find the following:

"Q. Well, if I may continue, insofar as Mr. McCarty is concerned then, possibly this immobilization caused the stone that you later found him to have? A. That's correct, but I don't know how anyone could say it did or it didn't.

"Q. It's more or less conjectural? A. That's right."

It is clear that the testimony of Dr. Ledyard on direct examination is sufficiently definite to establish causation under the test laid down in *Branch v. Pacific Mills,* 205 S. C. 353, 32 S. E. (2d) 1; *Glover v. Columbia Hospital of Richland County and State Workmen's Compensation Fund,* 236 S. C. 410, 114 S. E. (2d) 565; *Cross v. Concrete Materials,* 236 S. C. 440, 114 S. E. (2d) 828, and other cases. But the employer and carrier say his conclusion is of no probative value because the hypothetical question propounded to him includes material facts of which there is no proof. It is claimed (1) that there is no evidence that claimant was

immobilized a sufficient length of time to allow the formation of a kidney stone; (2) that the question propounded fails to include other factors, such as the degree of immobilization, diet and the amount of calcium in the system, all of which it is said must be considered in forming an opinion; and (3) that there is no evidence that shortly after the accident claimant was cystoscoped and found to be without stones.

It is quite true that the probative value of expert testimony based upon hypothetical facts stands or falls with the existence of facts upon which it is predicated. *Smith v. Southern Builders,* 202 S. C. 88, 24 S. E. (2d) 109; *Hines v. Pacific Mills,* 214 S. C. 125, 51 S. E. (2d) 383. But we do not think that the testimony of Dr. Ledyard should be rejected on either of the three grounds above mentioned. No fixed period of immobilization was included in the hypothetical question. Apart from this, however, claimant's testimony is to the effect that after being in the hospital for twelve days, he was taken home where he remained in bed most of the time for several months. With reference to the second ground, it may be reasonably assumed that Dr. Ledyard knew the effect of the circumstances referred to and took them into consideration.

The most serious question is the contention that the stone formed prior to the accident. The employer and carrier say that this is conclusively shown by the testimony of Dr. P. L. Bates, a urologist, who attended claimant when he was hospitalized in Greenwood. He appears to have made a rather complete physical examination of him at the time of admission. He testified twice during the hearing as a witness for the employer and carrier. On his first examination he said that on May 9, 1958, the day of admission of claimant to the Greenwood Hospital, he made an intravenous pyelogram which "showed both kidneys functioning normally"; that claimant returned to the hospital on May 31, 1958 complaining of passing blood clots in his urine; and that a further examination was then made, during the course

of which he looked at claimant's bladder with a cystoscope and there were no "ulcerations, no tumors and no stones." At his second appearance before the hearing Commissioner, Dr. Bates testified that on May 9, 1958 an intravenous pyelogram was taken and that the x-rays disclosed "a small crescent shaped stone in the left kidney." He said that later he made a cystoscopic examination of the bladder which disclosed no stone in that area. He admitted on cross examination that in his report covering almost three pages he made no mention of finding the kidney stone because he deemed that fact "not pertinent to this patient's clinical picture."

The only other testimony relating to the discovery of the stone was by Dr. Barron who testified that an x-ray examination made by him on September 11, 1958 disclosed a questionable shadow in the region of the left kidney and a further examination on March 12, 1959 proved this to be a stone.

We think the apparently conflicting statements of Dr. Bates raised an issue of fact for determination by the Industrial Commission as to the presence of a stone when claimant was examined at the Greenwood Hospital. We cannot say as a matter of law that there was no evidence to support the facts stated in the hypothetical question propounded to Dr. Ledyard.

Finally, it is contended that when considered as a whole, the testimony of Dr. Ledyard is insufficient to establish a causal connection between the original injury and the formation of the stone. It is argued that his testimony on direct examination that immobilization was "a large factor" or a "contributing factor" in the production of the stone was nullified by his later statement on cross examination that he did not see how anyone could definitely say that immobilization caused this stone. Although the question is a close one, we think it was for the Industrial Commission to determine whether Dr. Ledyard intended by his statements on cross examination to modify or rescind

the rather positive opinion previously expressed. In *Glover v. Columbia Hospital, supra,* 236 S. C. 410, 114 S. E. (2d) 565, on direct examination a physician testified that it was his opinion that an accidental injury most probably reactivated an existing cancerous condition and caused it to spread. But on cross examination he admitted that his opinion was "somewhat in the realm of speculation." The Court held that the latter qualification was insufficient to cause the rejection of this physician's testimony but presented a factual issue for determination by the Commission.

We now turn to the appeal of claimant. He contends that the Circuit Judge erred in setting aside the disfigurement award of $1,500.00 made by the full commission and reinstating that of $825.00 made by the hearing Commissioner. The Court below did so upon the ground that since claimant did not appeal from the award of the hearing Commissioner, the full Commission was not empowered to increase the award for disfigurement. Claimant asserts that the amount of the award for disfigurement was properly before the full Commission under the exceptions of the employer and carrier to the award of the hearing Commissioner, and that the amount of the award was "also raised before the Commission when the said Commission viewed the claimant without objections from counsel for the employer-carrier."

We do not agree that the exceptions of the employer and carrier to the award of the hearing Commissioner empowered the full Commission to increase the award. The only question raised by their exceptions relating to the amount of the award was that the hearing Commissioner should not have allowed any disfigurement resulting from the removal of the kidney stone because there was no causal connection between the presence of such stone and the original injury. No other question as to the amount of the award was raised. Under the contention made by the employer and carrier, it was proper for the Commission to view the

claimant to determine what portion of the disfigurement was due to the removal of the kidney stone. But apart from the foregoing, claimant is bound by the amount fixed by the hearing Commissioner since he did not appeal. *Ham v. Mullins Lumber Co.*, 193 S. C. 66, 7 S. E. (2d) 712; *Hoke v. Cherokee County*, 216 S. C. 376, 58 S. E. (2d) 330.

The exceptions of both parties are overruled and the order of the Circuit Court is affirmed.

TAYLOR. C. J., and LEGGE, Moss and LEWIS, JJ., concur.